FIRST NATIONAL BANK OF OTTAWA, Plaintiff and Counterdefendant-Appellee, *v.* CLIFFORD H. LARKINS *et al.*, Defendants and Counterplaintiffs and Third-Party Plaintiffs-Appellants.—(Ottawa Service Corporation, Third-Party Defendant-Appellee.)

Third District  No. 82—209

Opinion filed January 4, 1983.—Rehearing denied February 10, 1983.

Edwin R. McCullough, of Chicago, for appellants.

William N. Twohey and John F. Vickers, both of Ottawa, and James A. McPhedron and Cynthia M. Raccuglia, both of Anthony C. Raccuglia & Associates, of Peru, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

Plaintiff First National Bank of Ottawa (hereinafter First National) filed a complaint for damages allegedly occasioned by defendants Clifford H. Larkins' and Vietta Larkins' failure to make required payments as provided in a retail installment contract. The Larkins filed a counterclaim against First National and a third-party complaint against Ottawa Service Corporation (hereinafter Ottawa Service) alleging an usurious rate of interest in the contract. After a hearing on the merits of the latter pleadings, the circuit court of La Salle County entered summary judgment against the Larkins.

The facts are undisputed. On October 23, 1976, the Larkins executed a retail installment contract with Ottawa Service. The subject matter of the contract was a mobile home which was purchased by the Larkins for use by C. Lavina's Way, a not-for-profit corporation.

C. Lavina's Way was organized to operate a home for mentally and physically handicapped children, partially at the suggestion of the president of Ottawa Service, an incorporator. Shortly after its execution, Ottawa Service sold the contract to First National. It provided a cash price of $15,000 with $12,750 being the amount financed at an annual percentage rate of 12.1%. This resulted in a finance charge of $11,475.12 and a total deferred payment price of $24,225.12. The Larkins were required to submit 144 monthly payments of $168.23 beginning on December 1, 1976. Presented for our review is the sole question of whether the trial court erred in entering the summary judgments.

Both in this court and in the court below, the parties have extensively argued the various statutory provisions and methods of finance charge computation they believe applicable to the contract. While the factual framework of this cause would make a discussion of these theories interesting, such a dissertation is unnecessary to the disposition of the issue at bar.

■ The rule governing this situation was stated in *Clemens v. Crane* (1908), 234 Ill. 215, 229-30:

> "Usury is defined to be an illegal profit required and received by a lender of a sum of money from the borrower. [Citations.] To constitute usury, in contemplation of law, the following essential elements must be present: (1) There must be a loan or forbearance; (2) the loan must be of money or something circulating as money; (3) it must be re-payable absolutely and at all events; (4) something must be exacted for the use of the money in excess of and in addition to the interest allowed by law. Some decisions appear to imply that a fifth element should be added, consisting of the intent of the parties or at least of the lender, but it seems to us quite as accurate to say that the intention of the parties as the same appears from the facts and circumstances of the case may be considered, in connection with the other evidence, in determining whether the essential elements of usury are present in the particular case under investigation. The form of the contract is not conclusive of the question. The desire of lenders to exact more than the law permits and the willingness of borrowers to concede whatever may be demanded to obtain temporary relief from financial embarrassment have resulted in a variety of shifts and cunning devices designed to evade the law. The character of a transaction is not to be judged by the mere verbal raiment in which the parties have clothed it, but by its true character as disclosed by

the whole evidence. If, when so judged, it appears to be a loan or forbearance of money for a greater rate of interest than that allowed by law, the statute is violated and its penalties incurred, no matter what device the parties may have employed to conceal the real character of their dealings."

There can thus be no usury when there is "in no sense a loaning of money." (*Manufacturers Finance Trust v. Stone* (1929), 251 Ill. App. 414, 420.) On a sale of property, the parties can make such a bargain as they can agree upon and there is no usury charge simply because "the price is fixed at one sum if paid at one time, and at another sum if paid at another." (*Primley v. Shirk* (1895), 60 Ill. App. 312, 314, *aff'd* (1896), 163 Ill. 389, 45 N.E. 247.) This is in keeping with the general rule that a *bona fide* sale of property is not a loan or forbearance of money within the usury laws (see 35 Ill. L. & Prac. *Usury* sec. 3 (1958); 45 Am. Jur. 2d *Interest & Usury* sec. 122 (1969)), at least where both a cash and credit price are quoted (see Annot., 14 A.L.R.3d 1065, 1077 (1967)).

Additional support for the general rules is found in the decisions of this State regarding finance charges. In *Rose v. Sears, Roebuck & Co.* (1973), 12 Ill. App. 3d 929, 932, 299 N.E.2d 95, 97, *appeal denied* (1973), 54 Ill. 2d 596, the court noted:

"Before proceeding to examine the plaintiffs' arguments, we note that plaintiffs' attempt to brand the finance charge here as usurious interest is irrelevant since we are dealing with finance charges, which are not subject to the general interest provisions. (Ill. Rev. Stat. 1971, ch. 121½, par. 528.)"

Citing *Rose* and other cases, the court in *Johnson v. Sears, Roebuck & Co.* (1973), 14 Ill. App. 3d 838, 851, 303 N.E.2d 627, 637, *appeal denied* (1974), 55 Ill. 2d 602, explained:

"Thus, Illinois recognizes that a seller may sell his property for the immediate payment of a certain amount ('cash price') or permit payment over a period of time for a greater total price ('time price'). Such a transaction is not a loan, and the additional amount charged, the time price differential, is not subject to the usury laws."

This rule has also applied in cases of alleged criminal usury. (See *Gecht v. Suson* (1971), 3 Ill. App. 3d 183, 188, *appeal denied* (1972), 49 Ill. 2d 577.) It has not been applied in a pre-existing tripartite credit relationship (see *Harris Trust & Savings Bank v. McCray* (1974), 21 Ill. App. 3d 605, 609-10), where a real estate installment contract was deemed a business loan (see *Huss v. Moras* (1979), 77 Ill. App. 3d 554, 556-57), and it has not escaped criticism (see *Smith v.*

*Sears, Roebuck & Co.* (1981), 95 Ill. App. 3d 174, 179-80 (dissenting opinion), *appeal denied* (1981), 85 Ill. 2d 575).

The retail installment contract at bar quoted both a cash price of $15,000 and a deferred payment price of $24,225.12. No money was ever loaned to the Larkins. Nothing in the record reflects this was anything but a *bona fide* sale of property. Under these circumstances, we find no violation of section 4 of "An Act in relation to the rate of interest ***" (Ill. Rev. Stat. 1975, ch. 74, par. 4, currently codified at Ill. Rev. Stat. 1981,ch. 17, par. 6404).

Accordingly, the summary judgment of the circuit court of La Salle County is affirmed.

Affirmed.

BARRY, P.J., and ALLOY, J., concur.