CHARLES ROBERT GUESS, Plaintiff-Appellant, v. EDMUND J. BROPHY *et al.*, Defendants-Appellees.

Fourth District   No. 4—87—0359

Opinion filed December 23, 1987.—Rehearing denied January 27, 1988.

Dale A. Cini, Robert A. Hoffman, and Michael K. Radloff, all of Ryan, Cini & Bennett, of Mattoon, for appellant.

Brent D. Holmes, of Harlan Heller, Ltd., of Mattoon, for appellees.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On September 10, 1986, plaintiff Charles Robert Guess filed a three-count complaint in the circuit court of Coles County against defendants Landex Research, Inc. (Landex), and Edmund J. Brophy. On January 14, 1987, defendants' motion to dismiss the complaint was allowed. Plaintiff then sought leave to file an amended complaint consisting of five counts. On February 9, 1987, the circuit court permitted plaintiff to file amended counts IV and V but denied leave to file amended counts I, II, and III. On May 19, 1987, the circuit court allowed defendants' motion to dismiss amended counts IV and V and dismissed the entire complaint in bar of action. Plaintiff has appealed.

We are thus faced with the question of the sufficiency of original counts I, II, and III, and amended counts IV and V. All counts set forth the creation of the following transaction between plaintiff and defendants: (1) on July 21, 1986, a cousin of plaintiff's died intestate while residing in Florida and left plaintiff as an heir under Florida law; (2) plaintiff was unaware of the death; (3) operating through an agent, Landex contacted plaintiff and persuaded him to sign two documents; (4) one of the documents stated that Landex had revealed to plaintiff evidence of the existence of an estate from which assets were due plaintiff and, in consideration of that revelation, plaintiff assigned to Landex one-third of his interest in that estate; (5) that document contained the signature of Brophy, on behalf of Landex, and of plaintiff, but left blank the name of the decedent; (6) the other document was an assignment by plaintiff to Landex of a one-third interest in the estate of the decedent referred to in the document signed by plaintiff and Brophy; and (7) the document containing the assignment did not list the name of the decedent.

Counts I, II, and III alleged that one or both defendants had violated the Consumer Fraud and Deceptive Business Practices Act (Act) (Ill. Rev. Stat. 1985, ch. 121½, par. 261 et seq.) in entering into the foregoing contract with plaintiff. Amended count IV alleged that the contract was unconscionable, and amended count V asserted that the contract was procured by fraud. We will describe other allegations of the various counts as we pass upon their sufficiency. As the first three counts were brought under the Act, we must first decide whether the transaction alleged comes within the purview of the Act. The circuit court determined that the Act was not applicable, and that was its major reason for the dismissal of those counts.

The purpose of the Act, as stated in its preamble, is "to protect consumers [and others] against fraud, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or

commerce." Section 1(e) of the Act defines a "consumer" as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." (Ill. Rev. Stat. 1985, ch. 121½, par. 261(e).) "Merchandise" is defined as "any objects, wares, goods, commodities, intangibles, real estate situated outside the State of Illinois, or services." (Ill. Rev. Stat. 1985, ch. 121½, par. 261(b).) The words "trade or commerce" are described as "the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State." Ill. Rev. Stat. 1985, ch. 121½, par. 261(f).

In *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 371 N.E.2d 634, the supreme court held that an applicant for a medical school was not a "consumer" because he was not purchasing educational services from the institution. Then, in *Scott v. Association for Childbirth at Home, International* (1981), 88 Ill. 2d 279, 430 N.E.2d 1012, that court held that the sale of educational services falls within the meaning of the Act. The court concluded that the language of section 1(f) of the Act (Ill. Rev. Stat. 1977, ch. 121½, par. 261(f)) indicated that the Act was to have broad application.

The theory that the legislature intended the Act to cover many types of service contracts has been followed by the Fifth District in *Warren v. LeMay* (1986), 142 Ill. App. 3d 550, 491 N.E.2d 464 (treating and inspecting for termite infestation), and *American Buyers Club v. Honecker* (1977), 46 Ill. App. 3d 252, 361 N.E.2d 1370 (sale of memberships in a club whose members were enabled to place orders for merchandise at a savings over retail prices). On the other hand, the Act has been held to be inapplicable by the Third District in *McCarter v. State Farm Mutual Automobile Insurance Co.* (1985), 130 Ill. App. 3d 97, 473 N.E.2d 1015 (purported act of insurer's agent in settling claim of one of its insureds against another of its insureds). This district and the Third District, respectively, have held that the Act does not cover transactions involving service contracts where the wrongdoing is alleged to be an isolated breach of contract. *Grass v. Homann* (1984), 130 Ill. App. 3d 874, 474 N.E.2d 711; *Exchange National Bank v. Farm Bureau Life Insurance Co.* (1982), 108 Ill. App. 3d 212, 438 N.E.2d 1247.

None of the previously described cases are closely analogous to the instant case. Defendants maintain that *Frahm v. Urkovich* (1983), 113 Ill. App. 3d 580, 447 N.E.2d 1007, is closely in point. There, the court

held that the furnishing of legal services by lawyers is not within the Act. That plaintiff relied upon analogy to the determination in *Goldfarb v. Virginia State Bar* (1975), 421 U.S. 773, 44 L. Ed. 2d 572, 95 S. Ct. 2004, where the legal profession was determined to be subject to Federal antitrust legislation. The *Frahm* court noted that even in *Goldfarb*, the United States Supreme Court pointed out that the practice of law is not " 'interchangeable with other business activity.' " (*Frahm*, 113 Ill. App. 3d at 584, 447 N.E.2d at 1010, quoting *Goldfarb*, 421 U.S. at 788-89, 44 L. Ed. 2d at 585, 95 S. Ct. at 2013.) The *Frahm* court concluded that *Goldfarb* had reference to the commercially competitive aspects of the legal profession but not with the relationship to a particular client. The *Frahm* court deemed the breach of a lawyer's duty to a particular client to constitute a "private wrong" not subject to redress under the Act. 113 Ill. App. 3d at 586, 447 N.E.2d at 1011.

■ We are not certain about the analysis of coverage upon the basis of whether the transaction of which complaint is made constitutes a "private wrong." Clearly, the fact that a violation of the Act injures only one customer or client or arises out of a transaction in which only one client or customer is involved is not sufficient to remove the client or customer from the protection of the Act. However, we are confident that the legislature did not intend to include the furnishing of legal services to clients within the Act. As the *Goldfarb* court indicated, the furnishing of legal services has qualities which negate equating it to the furnishing of commercial services. Moreover, the legal profession is subject to a policing more stringent than that to which purveyors of most commercial services are subject. We agree with *Frahm* that the Act does not concern the furnishing of services by the legal profession.

■ We do not agree with defendants' contention that they should be subject to the same immunity as the legal profession. The complaint does not indicate defendants give advice to their customers or clients or act in their behalf as agents. They are alleged to give information to customers and procure people to aid them. No indication is given that the defendants are required to be licensed or are subject to any regulation by any governmental body. These distinctions are material and prevent them from being entitled to the same immunity in providing service as have lawyers. We conclude defendants are subject to the Act.

In count I plaintiff alleges that, in entering into the described transaction with plaintiff, Landex failed to inform plaintiff of plaintiff's rights under section 2B of the Act (Ill. Rev. Stat. 1985, ch. 121½, par. 262B) to avoid the contract arising from the transaction within three business days of the execution of the contract. Plaintiff seeks to

rescind the contract because of this violation and to obtain attorney fees and punitive damages.

Section 2B states that "[w]here a sale of merchandise involving $25 or more is made or contracted to be made *** to a consumer [resulting from] a person's contact with or call on the consumer" the consumer has a right of cancellation within three days and the person making the sale must furnish the consumer with a described notification of the consumer's rights in this respect. (Ill. Rev. Stat. 1985, ch. 121½, par. 262B.) Section 2B further provides that if a consumer does cancel the contract, the consumer must make available to the seller any "goods" received in the contract and those "goods" must be in substantially the same condition as when delivered to the consumer. Ill. Rev. Stat. 1985, ch. 121½, par. 262B.

We have previously determined that under the allegations of the complaint, plaintiff is a "consumer" within the meaning of the Act and the services involved in the transaction are "merchandise" within the meaning of the Act. Plaintiff has alleged that the size of plaintiff's interest in the decedent's estate is substantial, thus the $25 requirement of section 2B is met. However, a consumer receiving services under a section 2B transaction cannot return the services to the person furnishing the services in order to rescind the transaction. Accordingly, a substantial question is raised as to whether section 2B is intended to apply only to the sale of goods by salesmen who call upon customers or is also to include contracts for services entered into by calling on the consumers. That question seems to be answered by the portion of section 2B which states the section does not apply when "the consumer has initiated the contact and the goods or *services* are needed" because of a personal emergency and the consumer signs a waiver of a right to cancel. (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 121½, par. 262B.) That language indicates "services" are covered by the provisions of section 2B providing for cancellation. Apparently, if the contract is not for the sale of "goods," no "goods" need be returned in order to cancel.

Section 2B makes noncompliance with its provisions an unlawful practice. Count I alleges that Landex did not comply with section 2B. Count I states a cause of action. Section 10a(a) of the Act provides that for a violation of sections 2 through 20 of the Act, the court may, in its discretion "award actual damages or other relief." (Ill. Rev. Stat. 1985, ch. 121½, par. 270a(a).) Section 10a(c) of the Act permits the court, in its discretion, to award attorney fees. (Ill. Rev. Stat. 1985, ch. 121½, par. 270a(c).) Thus count I states a cause of action for rescission and for the award of attorney fees.

■ Count I also requests an award of punitive damages. The Act makes no special provision for punitive damages although section 10a(a) does permit award of "other relief." However, in order that punitive damages be awarded as "other relief," grounds for that relief would have to be alleged. Count I does not allege that the failure to give the notice amounted to the fraud, malice or gross negligence indicating wanton disregard for the rights of others which is the basis of an award of punitive damages. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353.) The portion of the count requesting such damages was properly stricken.

Count II is directed against Landex and count III is directed against Brophy. Each count alleges that the respective defendant violated section 2 of the Act, which prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices." (Ill. Rev. Stat. 1985, ch. 121½, par. 262.) Count V charges Landex with conduct similar to those set forth in count II but deems the conduct to be fraud. The thrust of each of these counts is that the defendants knew that plaintiff would receive his inheritance without defendants' help but represented to plaintiff that if he did not sign the agreement they proposed, he would not receive his share of the estate. The counts also allege that defendant relied upon these representations to his detriment.

■ In *Crowder v. Bob Oberling Enterprises, Inc.* (1986), 148 Ill. App. 3d 313, 499 N.E.2d 115, this court noted that to sustain a cause of action under the Act, plaintiff must establish (1) a deceptive act or practice; (2) an intent by the defendant that plaintiff rely on the deception; and (3) the deception occurred in the course of conduct involving a trade or commerce. (148 Ill. App. 3d at 316, 499 N.E.2d at 117.) Where, as here, the conduct alleged occurred in the course of a business, the elements of fraud pertinent to count V are much the same. The elements which must be alleged include (1) the party made a representation of material facts as opposed to opinion; (2) the representation made was untrue; (3) the party making the representation knew or believed the representation to be untrue; (4) the person to whom the representation was made had a right to rely on it and in fact did so; (5) the representation was made for the purpose of inducing the other party to act (or refrain from acting upon it); and (6) the representation made led to the injury of the person who relied on it. *Wolford v. Household Finance Corp.* (1982), 105 Ill. App. 3d 1102, 1104, 435 N.E.2d 528, 529-30.

■ Unless the alleged statement that plaintiff needed to agree with defendants' proposal in order to receive his inheritance be taken as a statement that under the law he could not recover without signing

the tendered documents, the statement is clearly one of opinion and not fact and not an element of fraud. Fraud, unlike most other allegations of misconduct, must be alleged with particularity. (*Horan v. Blowitz* (1958), 13 Ill. 2d 126, 148 N.E.2d 445; *Northwest Federal Savings & Loan Association v. Weisberg* (1981), 97 Ill. App. 3d 470, 422 N.E.2d 1101.) When judged by that standard, we do not deem count V to allege that defendants told plaintiff their services were legally necessary. The concept of deceptive acts or practices under the Act may well be broader than those of fraud at common law or in equity. Thus, the question of the sufficiency of the foregoing allegations as applied to counts II and III is a much closer question. Nevertheless, we cannot interpret the statements attributed to defendants as indicating more than that plaintiff needed their services to find out where the money available to him was located.

We dispose of the sufficiency of the other allegations of deception or fraud more easily. The principal one of these was that defendants had failed to reveal to plaintiff that (1) his cousin had died; (2) a proceeding for the administration of his cousin's estate was pending in Florida; (3) the identity of the attorney representing the estate; and (4) he was an heir of his cousin. The main service which defendants were to perform under this proposed aspect was the providing of this information. The Act would take on a most strange posture if a person offering to furnish such a service would be required to disclose his information before entering into a contract to fix the compensation for doing so. Clearly, their failure to provide such information was not a violation of the Act. Plaintiff further alleged that the service defendants were to perform under the agreement had no value. In *Glazewski v. Coronet Insurance Co.* (1985), 108 Ill. 2d 243, 483 N.E.2d 1263, the supreme court held that insurers who sold insurance coverage having absolutely no value to insureds were guilty of both a deceptive practice under the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 311 *et seq.*) and also fraud. The basis of the holding was that an insurer, in offering coverage, implied that the coverage had value. However, the court made clear that the sale of the coverage would not have been fraudulent or in violation of the Act as long as it had some value although much less than the premium. (108 Ill. 2d at 250, 483 N.E.2d at 1266.) Here, the information which defendants had was clearly of at least some value to plaintiff.

Amended count IV of plaintiff's complaint maintains that the agreement between the parties was unconscionable as to plaintiff because: (1) defendants knew plaintiff would receive his inheritance without their help but represented to plaintiff that he needed their help; (2)

plaintiff was uninformed of the operation of Florida laws of inheritance; and (3) plaintiff was unsophisticated, uneducated and in desperate financial circumstances because of loss of work for a long period during a labor dispute.

Under the circumstances alleged, plaintiff's entering into the purported contract would appear to be very unwise unless he had made a thorough search as to whether any of his relatives had died leaving an estate. However, a court will not set aside a contract merely because the agreement is not a wise one from the standpoint of the party seeking rescission. (*Scott & Fetzer Co. v. Montgomery Ward & Co.* (1984), 129 Ill. App. 3d 1011, 473 N.E.2d 421.) Nor will a court set aside a contract merely because it is unfair. (*In re Marriage of Kloster* (1984), 127 Ill. App. 3d 583, 469 N.E.2d 381.) Rather, a contract will be treated as unconscionable when it is so one-sided that only one under delusion would make and only one unfair and dishonest would accept. (*In re Marriage of Lee* (1985), 135 Ill. App. 3d 509, 514, 481 N.E.2d 1045, 1048.) Put another way, an unconscionable contract is one where a party has no meaningful choice and the terms are unreasonably favorable to the other party. *In re Marriage of Riedy* (1985), 130 Ill. App. 3d 311, 474 N.E.2d 28.

As we have indicated, here, the allegations would indicate that plaintiff was very unwise in entering into the agreement, but no allegation indicates that he was under delusion. Furthermore, we cannot say that a situation where plaintiff had no choice but to enter into the agreement was alleged. As also previously indicated, plaintiff could have inquired of relatives as to the death of any relative. Plaintiff could have received some benefit from being advised of the existence of the estate, and Landex was required, in order to earn its fraction of the estate, to aid in proving plaintiff's entitlement. Furthermore, Landex had, no doubt, undergone some detriment in locating plaintiff. The agreement, as alleged, was not so unfavorable to plaintiff as to justify the court's setting it aside. The court properly dismissed the count.

For the reasons stated, we reverse the dismissal of count I except the portion of the request for relief asking for punitive damages and affirm the rest of the judgment appealed. We remand for further proceedings.

Affirmed in part; reversed in part and remanded.

LUND and SPITZ, JJ., concur.