STACY LANE, Plaintiff-Appellant, v. OWEN FABERT, d/b/a Trader's World, *et al.*, Defendants-Appellees.

Fourth District   No. 4—88—0374

Opinion filed January 12, 1989.—Rehearing denied February 17, 1989.

LUND, J., concurring in part and dissenting in part.

Marvin Gerstein, of Urbana, for appellant.

Robert G. Kirchner, of Greaves, Lerner & Kirchner, of Champaign, for appellees.

JUSTICE SPITZ delivered the opinion of the court:

This case comes to us on appeal from the circuit court of Champaign County. Plaintiff appeals from the dismissal of count I of her complaint and summary judgment for defendant on the three remaining counts. We find the court was correct in dismissing count I and granting summary judgment on count II. We conclude it erred, however, in granting summary judgment on counts III and IV, sounding in consumer fraud and usury, and reverse judgment and remand as to them.

Defendant Owen Fabert does business as a pawnbroker under an assumed name, Trader's World. Plaintiff Stacy Lane received $60 from the business in exchange for a ring. The plaintiff's deposition shows she did not discuss the terms of the transaction with either Fabert or the clerk who waited on her. She signed a sales contract for the ring without reading it. Plaintiff had previously pawned this ring in November 1983 at the defendant's establishment. Plaintiff paid $18 a month to the defendant until February of 1986 when she went to redeem the ring and was told it could not be found. She stated she believed the ring was merely pledged property serving as security and she had specifically asked for a loan. She understood she would lose her rights to the ring if she failed to make an $18 payment each month.

On August 14, 1986, plaintiff filed her complaint in the circuit court of Champaign County. On August 17, 1987, the trial court dismissed count I of the complaint, refusing to imply a private cause of action under section 2 of "An Act for the regulation of pawnbrokers ***" (Ill. Rev. Stat. 1985, ch. 17, par. 4652).

Plaintiff filed an amended complaint on August 20, 1987, and a second-amended complaint containing an additional count IV on September 8, 1987. Count II of the amended complaint alleged common law fraud. Count III alleged statutory fraud under the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1985, ch. 121½, par. 261 et seq.). Count IV alleged violation of sections 5 and 6 of the Interest Act (Ill. Rev. Stat. 1985, ch. 17, pars. 6412, 6413). The trial court, having before it the motion briefs of the parties, the sales contract, and plaintiff's discovery deposition, granted summary judgment on the three remaining counts. The court's order was given on

May 5, 1988, and notice of appeal was filed on May 25, 1988.

Some confusion exists as to the exact status of the portions of counts II, III, and IV, naming as defendant Owen Fabert, Inc. This corporation was dissolved in December 1983. Plaintiff filed suit against defendant both as an individual doing business under an assumed name, Trader's World, and as the corporation Owen Fabert, Inc. Since the corporation was not in existence at the time the transaction took place or this cause was filed, defendant sought summary judgment against the plaintiff on all counts in regard to the defendant corporation. The court granted judgment and indicated that it did so on all counts.

However, judgment was granted based on a stipulation by defense counsel that plaintiff's pleadings could be amended should the corporation be reinstated. At a later hearing, a disagreement arose as to the precise terms of the stipulation and the trial court indicated that its earlier judgment had been inappropriate. It did not explicitly reverse its earlier ruling but granted plaintiff leave to file amended pleadings to include the defendant corporation. Later, at the same hearing, the court granted summary judgment on the merits of all remaining counts against the defendant individual.

Despite the fact the court had granted leave to file amended pleadings to include defendant corporation, plaintiff chose to agree that there were no pending matters before the court in order to allow appeal to this court. As the counts against the defendant corporation were identical in substance to those against the defendant individual, and judgment had been entered against plaintiff on the merits of these counts, refiling the pleadings again with a mere change of defendants would have been futile. Since plaintiff has not raised this issue on appeal, and the trial court's summary judgment as to defendant corporation still stands, only the portions of the counts relating to the defendant individual are in issue here.

Plaintiff urges this court to imply a private cause of action for what she alleges is a violation of section 2 of "An Act for the regulation of pawnbrokers ***" (Pawnbrokers Act) (Ill. Rev. Stat. 1985, ch. 17, par. 4652). Section 2 limits the interest charge on a loan from a pawnbroker to 3% per month. The trial court declined to imply such a cause, noting the existence of criminal penalties in the Pawnbrokers Act, the availability of other remedies to this plaintiff, and the failure of the legislature to provide such a remedy despite frequent amendments of the Pawnbrokers Act over its long history.

Plaintiff asks this court to imply a cause of action under section 2 of the Pawnbrokers Act. The Pawnbrokers Act in general provides

for the regulation of pawnbrokers. It is not comprehensive but requires that interest not exceed 3% per month, customers receive a memorandum of their transaction, records of transactions be kept and made available for inspection by law enforcement agencies, and reports be made to enforcement agencies on a regular basis. It also requires that pawnbrokers retain pledged property for one year after it is pawned. The general intention of the Pawnbrokers Act is to protect the public from unscrupulous practices and provide a means by which law enforcement agencies may recover stolen goods. Offenses under the Pawnbrokers Act are misdemeanors.

■ The appellate court considered the practice of implying private causes of action under a statute in *Lehmann v. Arnold* (1985), 137 Ill. App. 3d 412, 484 N.E.2d 473. There, the court held that where a statute is enacted for the protection of a particular class of individuals, a violation of its terms may result in civil as well as criminal liability, even though the former is not specifically mentioned therein. In deliberating whether to imply a cause of action, the court considered: (1) would the cause of action to be implied further the policy behind the statute; (2) is the plaintiff a member of the class to be protected; (3) is the injury suffered within the range of injury which the statute seeks to prevent; (4) is there a need for a civil remedy; and (5) is there anything in the statute which limits the remedies available.

■ In the instant case, an implied cause of action would further the policy of the statute by encouraging pawnbrokers to comply. Not only would they face the penalties of a misdemeanor charge but also the threat of action by wronged clients and recovery of usurious interest payments. Plaintiff was a client of the defendant and is clearly a member of the class which the statute seeks most strongly to protect. The injury which plaintiff claims, payment of excessive interest, is clearly one of the abuses which the Pawnbrokers Act seeks to eliminate. Plaintiff alleges she paid approximately 10 times the interest rate established by statute.

The question as to whether a private civil remedy is needed here is more complex. *Lehmann* involved a statute which required persons seeking to record plats of land within 500 feet of a water course to submit them to the Department of Transportation. The intent of the statute was to provide protection to purchasers of easily flooded land. The fine involved for violation of the statute was $200. The court considered the size of real estate transactions involved and the relatively small fine and found a private cause of action would provide a definite incentive for compliance by sellers of land. In this case, pawnbrokers

who violate the Pawnbrokers Act and are convicted, pay a fine of up to $500 for the first offense and $1,000 for subsequent offenses. (Ill. Rev. Stat. 1985, ch. 38, pars. 1005—9—1(2), (3).) With fines as large as $1,000 for each violation, this represents a substantial penalty, considering the relatively small size of a pawnbroker's usual transactions. In this case, the margin between the transaction size and that of the fine is not as extreme as in *Lehmann*. In addition, plaintiff's complaint amply demonstrates that a wide array of remedies is available to a plaintiff in this type of transaction. Finally, there is nothing in the Pawnbrokers Act which would indicate the remedies contained therein are exclusive.

Defendant has cited several cases to argue against a private cause here. In *Galinski v. Kessler* (1985), 134 Ill. App. 3d 602, 480 N.E.2d 1176, the court refused to imply a civil action for barratry (stirring up quarrels and suits (Ill. Rev. Stat. 1983, ch. 13, par. 21)), noting the long history of the statute with no implied private cause, no indication of legislative intent, and no indication that a private action would effectuate the purpose of the statute. In *Rhodes v. Mill Race Inn, Inc.* (1984), 126 Ill. App. 3d 1024, 467 N.E.2d 915, the appellate court distinguished between prohibitive and remedial statutes. It found a statute which forbade the use of certain types of glass in public areas to be prohibitive only and distinguished *Sawyer Realty Group, Inc. v. Jarvis Corp.* (1982), 89 Ill. 2d 379, 432 N.E.2d 849, on the grounds that the statute there was remedial.

In *Sawyer*, the Illinois Supreme Court was asked to imply a cause of action under the Real Estate Brokers and Salesmen License Act (Brokers Act) (Ill. Rev. Stat. 1977, ch. 111, par. 5701 *et seq.*). The Brokers Act licenses real estate brokers, and the court found it to be remedial because it provided a number of private remedies. However, the court noted that the sanctions under the Brokers Act did not aid plaintiff, nor did the available remedies. The court's opinion emphasized the need to provide adequate remedies to plaintiffs who were victims of deception and fraudulent practices, which the Brokers Act was intended to prevent.

The Pawnbrokers Act is similar to the Brokers Act considered by the supreme court in *Sawyer* in that it is intended to protect the public from deceptive practices and fraud in consumer transactions. However, the statute here is purely prohibitive and does not provide a wronged plaintiff with a private remedy. Unlike the plaintiff in *Sawyer*, the plaintiff here does have remedies available other than one which might be implied under the statute.

■ Plaintiff next argues the summary judgment on count II of

her complaint, sounding in common law fraud, was incorrect. Plaintiff here was involved in a transaction where there was no actual misrepresentation of a material fact. Plaintiff had previously been a customer of defendant and her deposition shows that very little communication took place between the parties during the transaction. In Illinois an essential element of actual fraud is misrepresentation. (*Seefeldt v. Millikin National Bank* (1987), 154 Ill. App. 3d 715, 506 N.E.2d 1052.) Plaintiff argues the Pawnbrokers Act prohibits the charging of interest over 3% per month and, therefore, defendant, when he held himself out to be a pawnbroker and charged more than the legally permitted rate of interest, was misrepresenting the legal rate of interest to plaintiff. In support of this argument, plaintiff cites *Peterson v. Yacktman* (1960), 25 Ill. App. 2d 208, 166 N.E.2d 452. That case is inapposite. In *Yacktman*, the defendant represented that he operated a public utility and was entitled to undertake certain activities. The fraud in *Yacktman* arose when defendant held himself out as possessing a status to which he was not entitled and claiming the right to carry out certain activities under statute as a result of his status. In this case, defendant was not misrepresenting himself as a pawnbroker since he carried out a pawnbroker's business and apparently fulfilled all relevant requirements for carrying it out. The defendant made no representations the rate he charged was authorized by statute.

The purpose of summary judgment procedure is to permit the court to determine if there is any genuine issue of fact. (*Kobus v. Formfit Co.* (1966), 35 Ill. 2d 533, 221 N.E.2d 633.) In this case, the facts of the transaction are undisputed by the parties. Plaintiff, however, contends the transaction was a loan arrangement; defendant, a sale with an option to repurchase. Plaintiff has attempted to argue the misrepresentation lay in defendant's holding himself out as a pawnbroker, then charging an impermissible rate of interest. This argument is too attenuated to fulfill the misrepresentation requirement. The defendant here was clearly entitled to hold himself out as a pawnbroker, and there is no evidence of misrepresentation as to either the interest rate or its legality. In addition, there is no evidence of a special relationship which would involve a legal or equitable duty on the part of defendant. While plaintiff was an unsophisticated borrower, this was an arm's-length transaction and constructive fraud doctrines cannot be employed to assist plaintiff.

Plaintiff's count III states a claim under the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (Ill. Rev. Stat. 1985, ch. 121½, par. 261 *et seq.*). The court, finding no

affirmative misrepresentation as to either the transaction or the defendant's status, entered summary judgment. However, plaintiffs suing under the Consumer Fraud Act need not establish all of the elements of common law fraud, as the Consumer Fraud Act prohibits any deception or false promise. (*First Security Bank v. Bachleda* (1987), 165 Ill. App. 3d 725, 520 N.E.2d 660.) To establish a cause of action under the Consumer Fraud Act a plaintiff must show (1) the defendant's actions or practice were deceptive; (2) the defendant intended the plaintiff to rely on the deception; and (3) the deception occurred in the course of conduct involving a trade or commerce. (*Guess v. Brophy* (1987), 164 Ill. App. 3d 75, 517 N.E.2d 693.) Here, the alleged deception was carried out in the course of trade or commerce. Plaintiff's affidavit shows that defendant regularly employed a sales contract in pawnbroking transactions while employing no contract at all in sales transactions. The sales contract employed named a corporate entity, Owen Fabert, Inc., which was not in existence when the contract was formed. Plaintiff paid $18 a month to defendant over the course of a year and one-half and apparently received nothing in return. An unconscionably high fee, for little or no service where tenants had no real alternative, has been held to be unfair or deceptive practice under the Consumer Fraud Act. (*People ex rel. Fahner v. Hedrich* (1982), 108 Ill. App. 3d 83, 438 N.E.2d 924.) Circumstantial evidence can give rise to an inference that a promisor possessed a fraudulent intent not to perform his promise at the time he made it. (*In re Marriage of Fricke* (1988), 174 Ill. App. 3d 191, 528 N.E.2d 370.) In instances where facts are undisputed, if reasonable minds might draw different reasonable inferences from such facts the trial court must deny summary judgment and direct that resolution of inferences be made by trial. *National Bank v. City of Lexington* (1985), 138 Ill. App. 3d 805, 486 N.E.2d 967, *appeal denied* (1986), 111 Ill. 2d 590.

■ We think this is a case where reasonable minds may draw different inferences from the facts. Defendant here has vigorously argued this is merely a simple sales transaction where the seller has become dissatisfied with her bargain. Had plaintiff merely received her $60 and gone on her way, we might be inclined to agree. Here, however, we have a necessitous, unsophisticated borrower dealing with an experienced pawnbroker. For a year and one-half after the transaction, plaintiff paid and defendant received $18 per month for which plaintiff apparently received nothing in return. Defendant characterizes these payments as consideration for an option to repurchase the ring. Defendant may be able to raise the sales contract as a shield to cover the initial transaction, but its shadow is not long enough to pro-

tect his subsequent actions from scrutiny. The facts of the transaction are undisputed but intentions of the parties are. Plaintiff paid her $18 each month intending to pay interest on what she suggests is a loan. Defendant received this money, though he denies this is a loan, and no discussion or negotiation ever took place with plaintiff as to what these payments were for. Clearly, the intent of defendant in receiving the payments is at issue here, particularly where plaintiff has received nothing for the large sum she has expended. Summary judgment is particularly inappropriate when the intent of the parties is at issue. (*Beauvoir v. Rush-Presbyterian-St. Luke's Medical Center* (1985), 137 Ill. App. 3d 294, 484 N.E.2d 841.) We conclude the plaintiff should be allowed to go to trial on this issue.

Count IV of plaintiff's complaint alleged a cause of action based on sections 5 and 6 of the Interest Act (Ill. Rev. Stat. 1985, ch. 17, pars. 6412, 6413). Section 5 forbids the acceptance of any interest over that permitted or authorized by law. Section 6 allows recovery of double the interest paid if a defendant accepts, by any means, any interest payments in excess of the legal rate.

The trial court did not state its grounds for granting summary judgment on this count. However, immediately prior to its decision, the court heard argument on the motion to grant judgment and reversed its earlier denial of summary judgment. Defendant had argued this transaction was not a loan as plaintiff was not required absolutely to repay the money borrowed and that plaintiff should not be able to go behind the sales contract which she signed.

To take defendant's arguments in reverse order, the defendant is incorrect in arguing that plaintiff could not go behind the written contract. Plaintiff paid substantial sums to defendant over the course of a year and one-half. There is considerable question as to why these sums were paid. Even taking the view most favorable to defendant, these were payments made under an oral contract for an option to purchase. What is in question here is the initial transaction and whether it was a loan or a sale. The rule dealing with contracts in cases of usury was stated long ago in Illinois:

"The form of the contract is not conclusive of the question. The desire of lenders to exact more than the law permits and the willingness of borrowers to concede whatever may be demanded to obtain temporary relief from financial embarrassment have resulted in a variety of shifts and cunning devices designed to evade the law. The character of a transaction is not to be judged by the mere verbal raiment in which the parties have clothed it, but by its true character as disclosed by the

whole evidence. If, when so judged, it appears to be a loan or forbearance of money for a greater rate of interest than that allowed by law, the statute is violated and its penalties incurred, no matter what device the parties may have employed to conceal the real character of their dealings." (*Clemens v. Crane* (1908), 234 Ill. 215, 230, 84 N.E. 884, 889.)

(See also *First National Bank v. Larkins* (1983), 111 Ill. App. 3d 953, 444 N.E.2d 818.) Under *Clemens*, plaintiff is not limited merely to the face of the contract but may show the complete transaction in order to state the portion of the case sounding in usury.

■■ Defendant also argues this is not a loan because it failed to comply with the requirement in *Clemens* that a loan be repayable absolutely and at all events. The plaintiff's affidavit indicates this was not the case. She stated that she understood all she had to do was to make the monthly interest payments to keep her loan current but she could pay off the loan completely by returning the principal plus any interest due at any time. Defendant also cites *Holden v. Nevergall* (1988), 172 Ill. App. 3d 700, 526 N.E.2d 928, for the rule that one who initiates a usurious transaction is estopped from raising a defense of illegality. The rule in *Holden*, however, is much narrower, holding that a party who suggests a usurious rate for a contemplated loan is estopped by his conduct from raising usury as a defense. In the instant case, while plaintiff initiated the transaction, she paid the "going rate" at defendant's place of business. Plaintiff's affidavit does not indicate that she suggested or, as in *Holden*, insisted on a usurious rate of interest for the loan she desired.

Section 5 of the Interest Act provides:

"No person or corporation shall directly or indirectly accept or receive, in money, goods, discounts or thing in action, or in any other way, any greater sum or greater value for the loan, forbearance or discount of any money, goods or thing in action, than is expressly authorized by this Act or other laws of this State." Ill. Rev. Stat. 1985, ch. 17, par. 6412.

Given the legislature's broad, expansive language in drafting the Interest Act and keeping in mind the teaching of *Clemens*, we cannot allow the judgment of the trial court to stand as to count IV. *Clemens* teaches that courts must consider the whole of a transaction when usury is an issue. A defendant cannot be allowed to stand behind the form or language of a contract to avoid the application of this statute. While the state of the record here would not support a summary judgment in this court for the plaintiff, this case provides an excellent example of the abuses which our State supreme court sought to amelio-

rate in its decision nearly a century ago. For this reason, the summary judgment of the trial court is reversed and remanded for further proceedings in the circuit court as to counts III and IV of plaintiff's complaint. The trial court's dismissal of count I and summary judgment as to count II are affirmed.

Affirmed in part; reversed in part and remanded.

GREEN, J., concurs.

JUSTICE LUND, concurring in part, and dissenting in part:

I concur with the majority affirmation of the count II summary judgment, and the reversal of the trial court's dismissal of counts III and IV. I would also reverse the trial court's dismissal of count I.

Section 2 of the Pawnbrokers Act (Ill. Rev. Stat. 1985, ch. 17, par. 4652) limits interest to 3% per month. The protection of the protected class is more important than the criminal ramifications. The complexities illustrated by the majority's analysis of counts III and IV indicate the need for the private right.