ERNESTO PARRA, JR., Special Adm'r of the Estate of Ernesto Parra, Deceased, Plaintiff-Appellant, v. TARASCO, INC., *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—90—3427

Opinion filed June 12, 1992.—Rehearing denied July 10, 1992.

Hardiman & Hardiman, P.C., of Chicago, for appellant.

Brody, Gore, Fineberg & Wikoff, Ltd., of Chicago, for appellees.

JUSTICE GORDON delivered the opinion of the court:

Plaintiff Ernesto Parra, Jr., special administrator of the estate of Ernesto Parra, decedent, filed a wrongful death action against defendants Tarasco, Inc., and unknown owners, d/b/a Jiminez Restaurant, alleging that decedent died when he choked on a piece of food in defendant's restaurant. The trial court dismissed the complaint pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—615), on the basis that defendant owed decedent no duty under the common law or the Choke-Saving Methods Act (Ill. Rev. Stat. 1989, ch. 56½, par. 601 *et seq.*).

The complaint, filed March 2, 1990, alleges that on March 4, 1989, decedent was a customer at defendant's restaurant, and that defendant owed decedent "the duty of exercising ordinary care in the ownership and operation of said restaurant." The complaint states that, "while eating his meal \*\*\*, food became lodged in the plaintiff decedent's throat and [he] was unable to breathe."

The complaint alleges that defendant was negligent in that defendant failed to post in a "conspicuous location that was visible to

patrons and employees \*\*\* instructions concerning first aid assistance to choking persons in violation of Illinois Revised Statute." Furthermore, defendant failed to instruct its employees in first aid; failed to promptly summon emergency medical personnel; and failed to assist decedent when he was choking.

On June 25, 1990, defendant filed a motion to dismiss. On November 2, 1990, the trial court granted that motion, dismissing the complaint with prejudice.

OPINION

■■ On appeal, plaintiff contends that the court erred in dismissing his complaint. In the complaint, plaintiff alleges that defendant owed decedent "the duty of exercising ordinary care in the ownership and operation of said restaurant." The common law recognizes no general duty to aid a person in peril. "[A] mere bystander incurs no liability where he fails to take any action, however negligently or even intentionally, to rescue another in distress." *Traudt v. City of Chicago* (1968), 98 Ill. App. 2d 417, 424, 240 N.E.2d 188.

A duty may exist, however, where some special relationship exists between the parties. (*Garrett v. Grant School District No. 124* (1985), 139 Ill. App. 3d 569, 487 N.E.2d 699; W. Keeton, Prosser & Keeton on Torts §56, at 373-77 (5th ed. 1984); Restatement (Second) of Torts, §314A (1965).) Courts have recognized a relationship between an invitee on premises open to the public and the possessor of the premises such that it creates such a duty. (See, *e.g., Lindsey v. Miami Development Corp.* (Tenn. 1985), 689 S.W.2d 856 (and cases cited therein).) The duty to render aid in such cases is a duty to use reasonable care under the circumstances. *Lindsey v. Miami Development Corp.*, 689 S.W.2d 856; *Coccarello v. Round Table of Coral Gables, Inc.* (Fla. App. 1982), 421 So. 2d 194 (*per curiam*); W. Keeton, Prosser & Keeton on Torts §56, at 382 (5th ed. 1984).

The parties have cited no Illinois cases, nor are we aware of any, which impose a duty on a restaurateur to rescue a customer from a danger which was not caused in the first instance by the restaurateur. It differs substantially from premises liability cases involving patrons injured in restaurants, or tort cases where a restaurant patron suffers injuries due to foreign substances in the food, or food poisoning. Instead, in a case such as the present one, where a restaurant patron chokes on food, the cause of the injury is wholly idiopathic, *i.e.*, it is of an internal, personal origin.

A restaurant is not like a public swimming pool where lifeguards are posted in anticipation of a patron's drowning, *i.e.*, his suffering an

injury directly related to swimming—the purpose of the existence of the swimming pool. See, *e.g., Decatur Amusement Park Co. v. Porter* (1907), 137 Ill. App. 448, 452 (owner of lakeside resort liable for failure to take precautions to prevent guest from drowning; duty to "guard against those accidents which common knowledge and experience teach are liable to befall those engaging in the sport which appellant had invited the public to participate in").

■ In contrast, at common law restaurants have never been required to post trained guards in anticipation of a patron's choking, *i.e.,* his suffering an injury directly related to eating—the purpose of the existence of the restaurant. As a general rule, a restaurateur is not an insurer of his customers' safety against all personal injuries. (See generally, 65 C.J.S. *Negligence* §63(131), at 909-12 (1966).) He has no duty as to "conditions or risks which are ordinary and are, or should be, known or obvious to the patrons." 65 C.J.S. *Negligence* §63(131), at 911 (1966).

■ Even if we were to find a common law duty existed, however, the Illinois legislature has enacted a statute providing that no liability exists for either attempting to help, or failing to help, a choking person in a restaurant. Section 5 of the Illinois Choke-Saving Methods Act provides as follows:

"Except as provided by law, no person shall be obligated to remove, assist in removing, or attempt to remove, food from another person's throat, nor shall any person who in good faith removes or attempts to remove such food in an emergency occurring at a food-service establishment be liable for any civil damages as a result of any acts or omissions by such person in rendering such emergency assistance." Ill. Rev. Stat. 1989, ch. 56½, par. 605.

Here, we agree with the trial court that the language of the statute is clear that the defendant restaurant cannot be held liable for civil damages as a result of failing to "assist in removing" food from decedent's throat.

Plaintiff, however, points to defendant's alleged failure to comply with section 4 of the Act, which requires that every restaurant "shall have posted in a conspicuous location that is visible to patrons and employees on the premises, but which location need not be in the actual dining areas, instructions concerning at least one method of first aid assistance to choking persons." (Ill. Rev. Stat. 1989, ch. 56½, par. 604.) Under the Choke-Saving Methods Act, participation in first aid training programs is only "on a voluntary basis by food service estab-

lishments to train employees in the first-aid procedures approved" under the Act. Ill. Rev. Stat. 1989, ch. 56½, par. 603.2.

Of the States which have a statute similar to the Illinois Choke-Saving Methods Act, only Indiana ties civil damages directly to the failure to post first aid instructions. See Ind. Code §§16—1—41—3 (requires posting sign; no location specified), 16—1—41—5 (restaurant not liable for civil damages "if there is an approved placard posted") (1991).

In California, Arkansas and Ohio statutes requiring the posting of first aid instructions for use in removing food lodged in a person's throat, it is expressly stated that failure to post the instructions shall not subject the restaurant to civil liability. See Cal. Health & Safety Code §28689 (West 1991); Ark. Code Ann. §20—57—207(d) (Michie 1991); Ohio Rev. Code Ann. §3732.09(D) (Anderson 1991) (failure "to post instructions *** shall not subject such food service operation *** to any criminal penalty or to civil liability").

Other statutes, like Illinois, Kentucky, Rhode Island, and Texas, require the posting of a sign, but make no reference to civil liability for failure to post the instructions. See Ky. Rev. Stat. Ann. §217.285 (Baldwin 1991) (restaurant must post instructions "in a location conspicuous to employees"; no reference to civil liability or criminal penalty tied to failure to post sign); R.I. Gen. Laws §§23—20.5—2(a) (must post instructions "in conspicuous locations"), 23—20.5—3 (violation of posting requirement is a misdemeanor punishable by a fine not more than $50) (1991); Tex. Code Ann. §438.051 (West 1991) (must post instructions "in a place conspicuous to employees or customers"). See also Mass. Gen. L. ch. 94, §305D (1991) (restaurant must have "device" to remove food or employee trained in manual procedures and insurance to cover those employees; no reference to posting of instructions).

Plaintiff, however, maintains that a private cause of action is implied under the Illinois statute, notwithstanding the absence of any reference to civil liability by the legislature. Even where the "legislature may have as [its] purpose the protection of a substantial segment of the public, [that] fact alone does not imply that the legislature intended to create a private cause of action for breach of the statute." (*Rhodes v. Mill Race Inn, Inc.* (1984), 126 Ill. App. 3d 1024, 1027, 467 N.E.2d 915, citing *Hoover v. May Department Stores Co.* (1979), 77 Ill. 2d 93, 103-04, 395 N.E.2d 541; *Teale v. Sears, Roebuck & Co.* (1976), 66 Ill. 2d 1, 5, 359 N.E.2d 473.) Although the courts will imply a private cause of action where there is a clear need to effectuate the purpose of an act (see, *e.g., Sawyer Realty Group, Inc. v. Jarvis*

*Corp.* (1982), 89 Ill. 2d 379, 432 N.E.2d 849), "the judiciary by implying causes of action is assuming policy-making authority, a power more properly exercised by the legislature. The court should exercise such authority with due caution." *Galinski v. Kessler* (1985), 134 Ill. App. 3d 602, 606, 480 N.E.2d 1176.

■ A private cause of action is found to exist under a statute where: (1) the plaintiff falls within the class of persons the statute is designed to benefit; (2) the plaintiff's injury is one the statute is intended to prevent; (3) implying the cause of action is consistent with the underlying purpose of the statute; and (4) implying a private cause of action is necessary to effectuate the purpose of the statute, *i.e.*, a civil remedy is needed. *Board of Education v. A, C & S, Inc.* (1989), 131 Ill. 2d 428, 470, 546 N.E.2d 580; *Sawyer Realty Group, Inc. v. Jarvis Corp.*, 89 Ill. 2d 379, 432 N.E.2d 849; *Lehmann v. Arnold* (1985), 137 Ill. App. 3d 412, 484 N.E.2d 473.

■ Plaintiff's decedent here falls within the class of persons the statute is designed to primarily benefit, and his injury (asphyxiation on food) is within the type of injury which the statute is designed to cover, since decedent was a customer in a food service establishment who had food become lodged in his throat. See Ill. Rev. Stat. 1989, ch. 56½, par. 601 *et seq.*

We find, however, that implying a private cause of action is not consistent with the underlying purpose of the statute. Like the purpose underlying Good Samaritan statutes (see, *e.g.*, Ill. Rev. Stat. 1989, ch. 111, par. 4400—30), the purpose here is to induce voluntary aid of restaurant customers who are choking and require immediate care, within only a few minutes, by removing the rescuer's fear of potential liability. (80th Ill. Gen. Assem., House Proceedings, March 16, 1977, at 28 (statements of Representative Capparelli) (stating that the Choke-Saving Methods Act is also covered by the Good Samaritan statute).) Under a similar statute in New York (N.Y. Pub. Health Law §1352—b (McKinney 1990)), the purpose has been described as follows:

> "It seems clear that the intent of the Legislature in enacting PHL §1352—b was to save lives by encouraging use of the Heimlich Maneuver. As a matter of public policy, the statute is designed to further the public's ability to render aid in cases of a choking emergency without imposing the economic burden of such aid on the restaurant owners, or other persons attempting to render aid." (*Acosta v. Fuentes* (1991), 150 Misc. 2d 1013, ____, 571 N.Y.S.2d 666, 667.)

We believe that to impose civil liability for not posting the sign would undermine the Act's purpose of encouraging voluntary aid by removing

the fear of potential liability. Thus, we find that a private cause of action would not be necessary to effectuate the purpose of the statute. The statute's purpose is best accomplished through the establishment of a business offense (Ill. Rev. Stat. 1989, ch. 38, par. 1005—1—2), *i.e.*, the monetary penalty which is set forth in section 6: "Any person who violates section 4 of this Act is guilty of a business offense and shall be fined $500." Ill. Rev. Stat. 1989, ch. 56½, par. 606.

In determining whether there is a need for a civil remedy, one factor to be considered is whether there is a criminal penalty. (*Lane v. Fabert* (1989), 178 Ill. App. 3d 698, 702-03, 533 N.E.2d 546; *Lehmann v. Arnold*, 137 Ill. App. 3d 412, 484 N.E.2d 473.) However, "the fact that the Act provides only a criminal penalty for its violation does not end the inquiry into whether a civil action is barred." *Rhodes v. Mill Race Inn, Inc.* , 126 Ill. App. 3d at 1026, citing *Heimgaertner v. Benjamin Electric Manufacturing Co.* (1955), 6 Ill. 2d 152, 155, 128 N.E.2d 691, and *Burton v. McClellan* (1840), 3 Ill. (2 Scam.) 434, 437.

Furthermore, the size of the fine ($500), compared to the benefit to be gained from the posting of the sign, does not indicate a private cause of action is needed. *Cf. Lehmann v. Arnold*, 137 Ill. App. 3d 412, 484 N.E.2d 473 (large size of real estate transactions compared to $200 fine indicates a private cause of action is needed as incentive for compliance with statute which requires the recording of plats near water so that buyers will know about easily flooded land); *Lane v. Fabert*, 178 Ill. App. 3d 698, 533 N.E.2d 546 (statute limits interest charge on pawnbrokers' loans to 3%; court holds that small size of pawnbrokers' usual transactions compared to $500 to $1,000 fines indicates no private cause of action is needed because penalty is already substantial).

Here, unlike other cases, it is not logical that some restaurant owners "would risk the threat of criminal sanction in order to escape their responsibility under the Act." (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 185, 384 N.E.2d 353 (court found it conceivable that some employers would risk criminal penalty under Worker's Compensation Act and fire its employees in retaliation for filing worker's compensation claims).) It is unlikely that a restaurateur would prefer to pay the $500 criminal penalty rather than post a single sign depicting the Heimlich Maneuver. The sign need not even be posted in the dining room, and thus the requirement offers little or no interference with the management of the restaurant. See 80th Ill. Gen. Assem., House Proceedings, March 16, 1977, at 29 (Statements of Representative Capparelli) (indicating amendment was included to ensure that restaurants could choose the "conspicuous" location, even posting the sign in bathrooms); 80th Ill. Gen. Assem., Senate Proceedings, May 31, 1977, at 16, (statements

of Senator Egan) (stating that the sign need not be posted "in the actual dining area, so as to preserve any particular decor that a restaurant might have").

Other methods attempting to address the statute's posting requirement would be extremely difficult to enforce. Moreover, any private recovery would be difficult to establish as to the pleading prerequisites, since it would in most instances be difficult to prove the necessary causal relationship between failure to post the sign and the ultimate injury.

■ Even if it were possible to state a private cause of action for failure to post the sign, and to establish the necessary causal relationship, plaintiff here failed to adequately allege that failure to post the sign was the proximate cause of decedent's death. The violation of a statute or ordinance designed for the protection of human life or property can be *prima facie* evidence of negligence, but the injury must have a direct and proximate connection with the violation. (*Dunn v. Baltimore & Ohio R.R. Co.* (1989), 127 Ill. 2d 350, 537 N.E.2d 738; *Dini v. Naiditch* (1960), 20 Ill. 2d 406, 417-18, 170 N.E.2d 881; *Horcher v. Guerin* (1968), 94 Ill. App. 2d 244, 249, 236 N.E.2d 576.) Plaintiff must include sufficient factual allegations that such violation was the proximate cause of his injuries. (See *Dini v. Naiditch,* 20 Ill. 2d at 417-18; *Munizza v. City of Chicago* (1991), 222 Ill. App. 3d 50, 56, 583 N.E.2d 561; *Horcher v. Guerin,* 94 Ill. App. 2d at 249-50; *Schwartz v. City of Chicago* (1965), 63 Ill. App. 2d 416, 422, 211 N.E.2d 477.) It is not sufficient to merely plead conclusions. *Munizza v. City of Chicago,* 222 Ill. App. 3d at 56 (complaint fails to allege sufficient facts to show that defendants' violation of ordinances was the cause of plaintiffs' injuries; complaint properly dismissed for failure to state private cause of action). See also *Horcher v. Guerin,* 94 Ill. App. 2d at 248-50 (complaint merely alleges conclusion that violation of building code (inoperative windows) was proximate cause of injury from fire; however, nothing indicates causal connection between inoperative windows and actual injury of plaintiff).

In order to state a cause of action, plaintiff must allege the ultimate facts which give rise to the cause of action, and liberality of pleading will not relieve plaintiff of the requirement that the complaint contain sufficient, factual averments and set out every fact essential to be proved. *In re Beatty* (1987), 118 Ill. 2d 489, 499, 517 N.E.2d 1065.

In determining whether proximate cause has been sufficiently set forth, it is important to "distinguish the causal connection between what the defendant did and the plaintiff's injury from the connection between the plaintiff's injury and the class of injuries from which the statute was

intended to afford protection [choking to death]." (2B N. Singer, Sutherland on Statutory Construction §55.05, at 287-88 (5th ed. 1992).) While clearly decedent's choking to death is precisely the class of injury for which the statute intends to afford protection, the necessary causal connection here runs between what defendant allegedly did—failure to post the sign—and plaintiff's injury—choking to death on his food.

The complaint here merely alleges that defendant:

"5.a. failed to post in a conspicuous location that was visible to patrons and employees in the premises instructions concerning first aid assistance to choking persons in violation of Illinois Revised Statute;

b. failed to instruct their employees in first aid assistance to choking persons;

c. failed to assist the plaintiff decedent who was choking after failing to post in a conspicuous place instructions concerning first aid assistance to choking persons.

6. That as a direct and proximate result of the aforesaid negligent acts or omissions of the defendants, the plaintiff decedent *** suffered personal injuries and died on March 18, 1989."

This broad, conclusory language fails to provide the necessary factual allegations which would establish a causal relationship between not posting the sign and decedent's death. There is no allegation, for example, that anyone tried to perform the Heimlich Maneuver but performed it incorrectly because the sign was not posted, or failed to undertake such an attempt because of a failure to post the sign.

Plaintiff additionally alleges in the complaint that defendant "failed to promptly summon emergency medical personnel." The statute only provides there is no duty to assist the customer "in removing, or attempt[ing] to remove, food from another person's throat." (Ill. Rev. Stat. 1989, ch. 56½, par. 605.) It does not provide that a restaurant operator has no duty to assist in any way, such as by calling for an ambulance.

As noted earlier, no cases in Illinois have been cited to establish any such affirmative duty by a restaurateur to his patrons. However, the Restatement (Second) of Torts §314A, Comment f, does impose a minimal duty upon a possessor of land who holds it open to the public to simply take steps to obtain medical care:

"f. The defendant is not required to take any action until he knows or has reason to know that the plaintiff is endangered, or is ill or injured. He is not required to take any action beyond that which is reasonable under the circumstances. In the case of an ill or injured person, he will seldom be required to do more than

give as much first aid as he reasonably can, and take reasonable steps to turn the sick man over to a physician, or to those who will look after him and see that medical assistance is obtained. He is not required to give any aid to one who is in the hands of apparently competent persons who have taken charge of him, or whose friends are present and apparently in a position to give him all necessary assistance." (Restatement (Second) of Torts §314A, Comment *f*, at 120 (1965).)

Prosser and Keeton treat the issue similarly:

"Where the duty to rescue is required, it is agreed that it calls for nothing more than reasonable care under the circumstances. The defendant is not liable when he neither knows nor should know of the unreasonable risk, nor of the illness or injury. He is not required to give aid to one whom he has no reason to know to be ill. He will seldom be required to do more than give such first aid as he reasonably can, and take reasonable steps to turn the sick person over to a doctor or to those who will look after him until one can be brought." W. Keeton, Prosser & Keeton on Torts §56, at 377 (5th ed. 1984).

While Illinois has no reported cases under the Choke-Saving Methods Act, courts in several other jurisdictions, construing either a similar statute or the common law, have found that, while there is no duty to render first aid, the restaurant personnel must summon medical assistance within a reasonable amount of time.

For example, California has a statute similar to that in Illinois, providing that there is "no obligation on any person to remove, assist in removing, or attempt to remove food which has become stuck in another person's throat." (Cal. Health & Safety Code §28689 (West 1991).) The California Appellate Court defined the extent of the proprietor's duty under the statute when it held that "this statute establishes as a matter of law that a restaurant meets its legal duty to a patron in distress when it summons medical assistance within a reasonable time." *Breaux v. Gino's, Inc.* (1984), 153 Cal. App. 3d 379, 382, 200 Cal. Rptr. 260, 262 (summary judgment for restaurant affirmed, where complaint alleged that decedent/customer choked on food and assistant manager of restaurant called for ambulance as soon as he became aware that decedent was in distress, but that no one attempted to give first aid to decedent).

Thus, "the business proprietor is not a stranger who can stand idly by, refuse to provide assistance that is available, and let his customer die." (*Drew v. LeJay's Sportmen's Cafe, Inc.* (Wyo. 1991), 806 P.2d 301, 307 (Cardine, J., dissenting), citing Restatement (Second) of Torts §314A (1965).) See also *Acosta v. Fuentes*, 150 Misc. 2d 1013, 571

N.Y.S.2d 666 (upholding summary judgment for defendant/restaurant where defendant's employees had called "911"); *Drew v. LeJay's Sportsmen's Cafe, Inc.* (Wyo. 1991), 806 P.2d 301, 305 (restaurant owner's common law duty to customer choking on food was only to make a "timely call for professional medical assistance"); *Coccarello v. Round Table of Coral Gables, Inc.*, 421 So. 2d 194 (proprietor of a public place has a common law duty only to take reasonable action to give aid such as calling rescue squad after he knows that a patron is choking on food). But see *City National Bank v. 4000 Restaurant, Inc.* (Fla. App. 1979), 372 So. 2d 1146 *(per curiam)* (affirming dismissal of complaint alleging defendant restaurant failed to secure medical aid for customer choking on a piece of meat when defendant was placed on notice that she required medical aid) (with one judge dissenting). See generally Annot., *Duty of Retail Establishment, or Its Employees, to Assist Patron Choking on Food*, 2 A.L.R.5th 966 (1992).

■ Here, there is no factual allegation in the complaint which even hints at a causal connection between decedent's death, and any action or inaction by defendant. In fact, there is no allegation that anyone in the restaurant had *any* knowledge that decedent was choking. There is no allegation that defendant's employees had discovered decedent choking and refused to call, or delayed calling, for medical assistance. There is no allegation that, but for the failure of defendant to summon an ambulance, decedent would have lived. *Cf. Acosta v. Fuentes,* 150 Misc. 2d at ____, 571 N.Y.S. at 669 (if the patron choking on his food was "already doomed to die" before the restaurant's employees called an ambulance and moved him outside, then no causal connection has been shown between defendants' action or inaction and decedent's death).

We conclude that the trial court properly found that plaintiff's allegations of negligence based on defendant's failure to post a sign, or failure to secure or render first aid, did not state a cause of action.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

McNULTY, P.J., and MURRAY, J., concur.