STATE FARM LIFE INSURANCE COMPANY, Plaintiff-Appellee and Cross-Appellant, *v.* TOWN AND COUNTRY ASSOCIATES *et al.*, Defendants-Appellants and Cross-Appellees.

Fourth District    No. 15935

Opinion filed June 20, 1980.—Rehearing denied July 23, 1980.

MILLS, P. J., concurring in part and dissenting in part.

Robert Oxtoby, of Van Meter, Oxtoby & Funk, of Springfield, and John K. Kallman, of Rudnick & Wolfe, of Chicago, for appellants.

Hugh J. Graham, Jr., and Richard J. Wilderson, both of Graham and Graham, of Springfield, for appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

This case concerns application of section 7 of "An Act relating to mortgages of property of public utilities" (Ill. Rev. Stat. 1977, ch. 95, par. 57). The parties do not dispute that it applies to mortgages and trust deeds made by other debtors as well. Section 7 provides a method whereby defaults in periodic payments on obligations secured by such instruments may be cured, even after due date of payments has been accelerated and foreclosure started, by tender of payment of periodic payments due prior to acceleration plus costs and mortgagee's attorney's fees as determined by the court. A question raised is whether use of the remedy of section 7 was available here after a prior suit to foreclose the mortgages involved here had been dismissed in 1975. Section 7 provides that reuse of the

procedure is prohibited for a period of five years "from the date of dismissal of such proceeding" where previously used.

Plaintiff, State Farm Life Insurance Company, filed suit in the circuit court of Sangamon County on December 11, 1978, seeking to foreclose three mortgages on two adjoining tracts owned by defendants, National Bank of Albany Park in Chicago, as trustee of a land trust, and Miller Associates as beneficiary thereof. The complaint alleged as to each mortgage (1) failure to make monthly payments due in September, October, and November of 1978, (2) commission of waste by permitting buildings and parking lots thereon to deteriorate, and (3) acceleration of the due date of full principal amount of the secured indebtedness. Defendants responded with a motion alleging their tender of the amount of installments due without acceleration together with interest and requesting that the court fix reasonable attorney's fees, costs and expenses to be paid by them to plaintiff. The motion also stated that all nonmonetary defaults by them were being rectified. Plaintiff responded asserting partially that defendants had previously exercised the section 7 remedy in regard to the same mortgages in a foreclosure suit dismissed on September 29, 1975, which was within five years.

The trial court heard evidence on the issues raised and on June 18, 1979, entered an order finding (1) defendants were in monetary default, (2) dismissal of the 1975 foreclosure suit prevented defendants' use of section 7, and (3) defendants were not committing waste. A decree of foreclosure was entered August 29, 1979. Defendants appeal contending that the court erred in prohibiting their use of section 7. Plaintiffs cross-appeal the finding in regard to waste. We affirm in all respects.

The following evidence in regard to the 1975 case was before the court in this case. Suit was filed on August 20, 1975, and involved default in the same mortgages. The parties agreed that:

"It is stipulated that by payment of principal and interest payments in the total amount of $64,131.31, being payments in arrears as of September 1, 1975, and costs of suit of $429.92, and legal fees of $1,890.00, the mortgage loans set forth in the suit are now current and the suit may be dismissed."

The trial court then entered an order on September 29, 1975, which stated:

"This matter coming on to be heard on the stipulation of the parties and it appearing to the court that the mortgage loans described in the complaint are now current, IT IS ORDERED that the suit be and it is hereby dismissed."

Attached to a pleading filed by defendants was an affidavit of the sole general partner of Miller Associates stating that in 1975 when the

mortgages were made current and plaintiff's attorney's fees and costs paid, "[n]o mention was ever made by anyone of Associates' use of a legal right to bring the mortgages current." No counteraffidavit was filed to this assertion nor was any countervailing evidence ever presented. Defendants also place reliance on a letter by an officer of plaintiff to its trial counsel dated September 19, 1975, but that document was never admitted into evidence.

The specific language of section 7 limiting its reuse is:

"The relief granted by this Section shall not be exhausted by a single use thereof, but shall not be again available under the same trust deed or mortgage for a period of 5 years from the date of the dismissal of such proceedings." (Ill. Rev. Stat. 1977, ch. 95, par. 57.)

Defendants maintain that they should not be held to have made "use" of the remedy in 1975 because (1) plaintiff's dismissal of that case was voluntary, (2) section 7 is remedial legislation which should be construed favorably to mortgagors whom it was designed to help, and (3) other portions of the legislation have been construed favorably to mortgagors. They contend that the 1975 proceeding would have given rise to a "use" only if they had made a motion to dismiss the proceedings because of their rights under section 7 or if the parties' stipulation had shown that it was being agreed to because of the existence of that remedy. Plaintiff asserts that regardless of the foregoing, defendants' 1975 payment of installments due plus fees and costs constituted a "use" of section 7.

Although the question is fairly close, we agree with plaintiff.

The crucial provisions of section 7 with reference to its operation provide that within time limits not in issue here, the mortgagor

"* * * may pay the entire amount then due under the terms of the trust deed or mortgage, including costs, expenses and reasonable attorneys' and trustees' fees as fixed by the court, other than such portion of the principal as would not be due had no acceleration occurred, and cure all other defaults then existing. Thereupon, all proceedings for the foreclosure of such mortgage or trust deed shall be dismissed and any other proceedings for the collection of the obligation secured thereby shall be dismissed or stayed and the trust deed or mortgage together with the evidence of indebtedness secured thereby shall remain in force the same as if no acceleration or default had occurred."

■■ This language clearly shows that the payment of the required sums is the crucial act and that it automatically sets in force the operation of the section. This is borne out by dictum in *Federal National Mortgage Association v. Bryant* (1978), 62 Ill. App. 3d 25, 27-28, 378 N.E.2d 333, 336. There the appellate court held foreclosure of a mortgage to have been inequitable when only one periodic payment had been missed and the

mortgagor then soon made a tender which could have been applied to the overdue payment. The court noted that had tender been made after the foreclosure suit had been filed, that tender, together with payment of costs and fees, none of which had been incurred at the time of the tender actually made, would have "cured" the default by operation of section 7.

As the tender of payment of the amounts required after suit for foreclosure had been filed cures the default, those are the acts that trigger the operation of section 7 and constitute its use. When defendants made the payments in 1975 and "cured" their default, they "used" section 7.

We do not deem any rules of construction to indicate an interpretation contrary to that stated. As is often the case, conflicting rules of statutory construction are involved here. At common law, when (1) the mortgagor had missed periodic payments, (2) the principal debt had been accelerated, and (3) foreclosure started, the mortgagor could not cure the default without payment of the accelerated debt. (59 C.J.S. *Mortgages* §495(6)(b) (1949).) Thus, the statute is in derogation of the common law. Such legislation is usually strictly construed. (*Cedar Park Cemetery Association v. Cooper* (1951), 408 Ill. 79, 96 N.E.2d 482.) On the other hand, it is remedial and thus ordinarily liberally construed to effectuate its purpose. (*Zehender & Factor, Inc. v. Murphy* (1944), 386 Ill. 258, 53 N.E.2d 944.) In *Lites v. Jackson* (1979), 70 Ill. App. 3d 374, 376, 387 N.E.2d 1118, 1120, the court applied the rule that a remedial statute in derogation of the common law will be strictly construed in determining what persons are within the statute. Defendants argue that, accordingly, such a statute will otherwise be liberally construed. We are not persuaded that such a conclusion necessarily follows.

■■ In arguing that courts of review have always construed the section in favor of the mortgagor, defendants rely on *Evergreen Savings & Loan Association v. Barnard* (1978), 65 Ill. App. 3d 492, 382 N.E.2d 467, and *Paulauskas v. Rumsas* (1971), 1 Ill. App. 3d 460, 275 N.E.2d 270. Both concerned initial cures of defaults by mortgagors. Here, we are concerned with an attempt by mortgagors to cure defaults for a second time within five years. The statutory intent would appear to be to allow mortgagors to have full opportunity to cure defaults a first time but to protect mortgagees from repeated use of the remedy. This intent is served by our interpretation that a "use" had occurred when default was cured in a manner consistent with the statutory requirements even though the dismissal of the foreclosure suit was not ordered by the court on the mortgagor's request and the record did not show that the mortgagee's consent was obtained because of the existence of section 7.

■■ We do not find the trial court finding that waste was not being committed to be contrary to the manifest weight of the evidence. Evidence showed that action was being taken to make repairs. The

timeliness of the actions was the principal issue. The trial court was in a better position than we are to judge the reasonableness of delays by defendants.

For the reasons stated, we affirm.

Affirmed.

WEBBER, J., concurs.

Mr. PRESIDING JUSTICE MILLS, concurring in part and dissenting in part:

*First*, I agree with my brethren that the trial court was correct in its finding regarding waste and that it should be affirmed as to plaintiff's cross-appeal.

*Second*, Mr. Justice Green is correct that the question of what constitutes "use" under section 7 is "fairly close."

But, *third*, I can't agree with the majority's conclusion as to section 7.

The hub of this axle is the solitaire word "use." This does *not* connote to me an involuntary, automatic implementation. Rather, it inherently suggests to me an affirmative, knowing, intentional reliance upon whatever relief is available or whatever result that is to follow.

How has "use" been defined in a purely clinical, sterile sense?

Black's Law Dictionary (5th ed. 1979) defines "use" thusly: "To make use of, to convert to one's service, to avail oneself of, to employ." And Webster's Third New International Dictionary (1976) defines the verb "use" in this way: "to put into action or service; have recourse to or enjoyment of; EMPLOY * * *; EXERCISE." As synonyms for "use," Webster gives "employ, utilize, apply, avail; use is general and indicates any putting to service of a thing, usually for an intended or fit purpose * * *."

The stipulation by the parties in the court below made absolutely no reference to section 7 or the statute. Neither did the court's order. In fact, the suit below ignored this legislation. (The majority, by the way, correctly cites to *Cedar Park Cemetery Association* for the hoary proposition that a statute such as this that is in derogation of the common law is usually strictly construed.)

It seems to me that in order to "use" something, it must be a knowing, intentional utilization of that thing—an act which is done with knowledge and affirmative intent.

Such was not demonstrated by the parties in the instant foreclosure suit in the circuit court. Nothing about section 7 was said. And not having been said, it was not germane in this case.

On this issue, I would reverse.