**In re K TOWN, INC., Debtor.**

**K TOWN, INC., Plaintiff,**

v.

**METROPOLITAN BANK & TRUST COMPANY, Defendant.**

**Bankruptcy No. 93 B 08587. Adv. No. 94 A 00186.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Aug. 1, 1994.

William J. Stevens, Chicago, IL, for debtor/plaintiff.

George D. Karcazes, Gary E. Green, Martin & Karcazes, Chicago, IL, for defendant.

### MEMORANDUM OPINION ON MOTION OF METROPOLITAN BANK FOR SUMMARY JUDGMENT ON K TOWN'S ADVERSARY COMPLAINT

JACK B. SCHMETTERER, Bankruptcy Judge.

This Adversary proceeding relates to plaintiff's bankruptcy proceeding under Chapter 11. Plaintiff, K Town, Inc. ("K Town"), sued Metropolitan Bank & Trust Company ("Metropolitan"), asserting that defendant breached a fiduciary duty and wrongfully setoff accounts held by defendant, thereby causing K Town to incur losses. Metropolitan moved for summary judgment. For reasons discussed below, that motion is allowed.

### JURISDICTION

This matter is before the Court pursuant to 28 U.S.C. § 157, and is referred here under Local District Court Rule 2.33. This Court has subject matter jurisdiction under 28 U.S.C. § 1334. This is not a core proceeding under 11 U.S.C. § 157(b), but is related to K Town's Chapter 11 case. Both K Town and Metropolitan have consented in writing to entry of final judgment by this Court as permitted by Fed.R.Bankr.P. 7008(a) and 28 U.S.C. § 157(c)(2).

### SUMMARY JUDGMENT STANDARDS

Under Fed.R.Bankr.P. 7056 (incorporating Fed.R.Civ.P. 56), summary judgment is proper if pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine

issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and must identify those materials which demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. Once the motion for summary judgment is made and properly supported, a party opposing summary judgment may not rest upon mere allegations or denials in pleading. *Id.* at 324, 106 S.Ct. at 2553. The non-movant must then demonstrate that there is a genuine issue requiring trial. *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355–56.

■ In considering a motion for summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355–56.

### *UNDISPUTED FACTS*

The following undisputed facts emerge from materials that both parties have filed with the court under Local District Court Rule 12(m) and (n), formerly adopted as a Local Bankruptcy Court Rule (and later superseded by Local Bankruptcy Court Rule 402(m) and (n), effective July 11, 1994):

1. Plaintiff K Town is an Illinois corporation located at 2500 South Pulaski Road in Chicago. The president and sole shareholder of K Town is Mr. Alfredo Lopez ("Lopez"). Lopez is also president and sole shareholder of another business relevant to this dispute, Lazcono Enterprises, Inc. ("Lazcono"). Defendant Metropolitan is an Illinois banking corporation located at 2201 West Central Road in Chicago.

2. On April 20, 1988, Lazcono and Lopez requested and received a loan from Metropolitan in the principal amount of $210,-000.00. The loan (account number 7833) was secured by a mortgage on property at 4136–42 West 26th Street, an assignment of rents, a personal guaranty from Lopez, and a guaranty from K Town.

3. Paragraph 3(ii) of K Town's Guaranty of the Lazcono Note states in part:

[K Town] agrees ... that in one or more instances ... after the occurrence of an Event of Default ... with or without notice to [K Town] (ii) ... any security at any time held by ... [Metropolitan] for any obligation of [K Town] may be sold, exchanged, surrendered, compromised, or released.

4. Paragraph 4 of K Town's Guaranty of the Lazcono Note states in part:

This is a guaranty of payment and not of collection and [K Town] expressly waives any right to require that any action be brought against [Lazcono] ... or to require that resort be had to any security ... in favor of [Lazcono] or [K Town] or to any other right or remedy that might be available to [Metropolitan].

5. Paragraph 7(a) of K Town's Guaranty of the Lazcono Note states in part:

[Metropolitan] shall have the right to set-off, at any time without notice to [K Town], any and all deposits ... at any time ... due from [Metropolitan] to [K Town], ... which deposits ... shall ... constitute additional security for [the Lazcono Note] and the obligations of [K Town] under this Guaranty.

6. On July 20, 1989, K Town and Lopez requested and received two more loans from Metropolitan. One loan was a Revolving Line of Credit Agreement (account number 8168) which was not to exceed $55,000.00. It was secured by a trust deed on property at 2500 South Pulaski, an assignment of rents, an assignment of beneficial interest in a land trust and an individual guaranty by Lopez. The second loan was an Installment Note (account number 8169) in the principal amount of $65,000.00 which was secured by a trust deed on the property at 2500 South

Pulaski, an assignment of rents and an individual guaranty by Lopez.

7. On December 31, 1990, Metropolitan notified Lopez that the Lazcono Note was three months in default, that Metropolitan had accelerated the obligations due, and that it demanded payment in the amount of $187,292.86. On the same day, Metropolitan notified Lopez that both the K Town Revolving Line of Credit and the K Town Installment Note were three months in default, that Metropolitan had accelerated the obligations due, and that it demanded payment in the amounts of $55,179.11 for the Revolving Line of Credit and $66,490.32 for the Installment Note.

8. On January 8, 1991, Metropolitan's counsel notified Lopez in his individual capacity and also as president of Lazcono and K Town of the defaults and accelerations of the three loans. Metropolitan demanded payment of the accelerated amounts. On January 25, 1991, it filed an action to foreclose on the two real properties securing the Lazcono Note, the K Town Revolving Line of Credit and the Installment Note. This action was filed in the Circuit Court of Cook County, Illinois, Chancery Division.

9. On February 6, 1991, counsel for Metropolitan sent Lopez and K Town a letter by certified mail which read in relevant part:

. . . . .

*Loans Nos. 8167 & 8618*
*K Town Checking Account No. 361349920*
. . . .
Please be advised that ... Metropolitan ... is exercising its right to set-off *against the captioned account* as a result of K Town's default *under the captioned loans* and pursuant to Paragraph 10 of the Revolving Line of Credit. . . .
Please govern yourself accordingly.

(Emphasis added.)

10. On February 5, 1991 (the day before the February 6 letter), Metropolitan offset $6792.38 from K Town's checking account (account 361349920) against the delinquent Lazcono Note (account 7833), not against the two loans referred to in the February 6 letter the next day. On February 7, 1991 (one day

after the February 6 letter), Metropolitan offset an additional $4183.85 between the same two accounts. Metropolitan applied $7,946.15 to the delinquent Lazcono Note and $3030.08 to the delinquent real estate tax escrow account for the Lazcono Note.

11. Lopez, Lazcono, and this debtor filed bankruptcy petitions. The Lopez and Lazcono bankruptcy actions were dismissed on July 1, 1993. However, the K Town Chapter 11 proceeding is still pending before this Court. The order dismissing the Lopez case anticipated that an agreement would soon be signed between Lopez and Metropolitan. On July 15, 1993, Alfredo Lopez and Metropolitan signed that agreement restructuring the debt still owing from Lopez, Lazcono, and K Town to Metropolitan. However, that agreement contained no express waiver of other claims which either party might have had against the other.

### ARGUMENTS OF THE PARTIES

The Adversary Complaint alleges K Town was tortiously damaged by Metropolitan through the set-off. But Metropolitan asserts both a common law and a contractual right to setoff the past due interest on the defaulted Lazcono loan against K Town's checking account. The K Town account was applied to the past due interest on the Lazcono Note ($7,946.15) and the Lazcono tax escrow account ($3,030.08). Metropolitan argues that there is no issue of material fact because K Town admits it guaranteed the Lazcono Note and admits that all three loans were in default and does not dispute the contractual provision allowing set-off.

In response, K Town argues that Metropolitan had an obligation to apply the K Town checking account to cure arrearages on the K Town loans. This obligation is alleged to arise from one of two sources.

First, Metropolitan is said to have had a fiduciary duty to apply the funds in the K Town checking account in a manner consistent with K Town's best interests. K Town claims that the fiduciary duty arose when Metropolitan placed K Town checking account funds in a segregated account which K Town could not control. K Town alleges its interests would have been best served if Met-

ropolitan had applied the K Town checking account balance to cure the default on the two K Town loans. K Town argues that foreclosure on the property securing the K Town loans would have been averted if the money in the K Town checking account had instead been used to cure the defaults on the K Town loans.

K Town's second claim is that the February 6, 1991, letter from Metropolitan to K Town operated as a waiver by election. The letter states that Metropolitan intended to setoff K Town checking account number 36134920 against loan account number 8167 (K Town's Revolving Line of Credit Agreement) and loan account number 8168 (K Town's Installment Note). K Town alleges that Metropolitan's asserted obligation to setoff the K Town loans effectuated a cure of both K Town loans under the Illinois Reinstatement Statute.[1] K Town contends that the Mortgage Reinstatement Statute prevented Metropolitan from accelerating the K Town mortgages and claiming the entire accelerated amount of the loans due because there was a set-off sufficient to cover the loan arrears, the late fees and Metropolitan's attorneys' fees. Finally, K Town contends that, because of the way the set-off was accomplished, it was forced to sell its repair shop below market value and to file Chapter 11 Bankruptcy, all because Metropolitan did not act as represented in the February 6 letter.

On the foregoing arguments, the Bank prevails for reasons discussed hereinbelow.

■ Metropolitan asserts several other arguments which either lack merit or need not be addressed. The first is that K Town's checking account could not be used to deem a cure of default of the two K Towns under the

Reinstatement Statute because K Town is not a "mortgagor", which is the proper party entitled to exercise rights under that statute. Metropolitan reasons that the properties securing the K Town loans were held in a land trust of which Lopez was the sole beneficiary. A land trustee holds actual title to land held in trust, making the trustee the mortgagor, the proper party to exercise provisions of the Reinstatement Statute. This reasoning appears incorrect under Illinois law. *See Evergreen Savings and Loan Assoc. v. Barnard,* 65 Ill.App.3d 492, 22 Ill.Dec. 147, 152, 382 N.E.2d 467, 472 (Dist. 1 1978). The language of the predecessor statute, Ill.Rev. Stat., ch. 95 par. 57, was construed in *Evergreen* where the court allowed a beneficiary of a land trust to cure a mortgage default using the Reinstatement Statute. *Id.* The court held, "we cannot accept [the] assertion that a strict construction of the term 'mortgagor' must be adopted under all circumstances." *Id.*

■ Metropolitan's second argument is that the Illinois 90–day statute of limitations for reinstating a mortgage has run, and that any claim asserting that the mortgage should rightfully have been reinstated is time barred. Metropolitan argues that, because K Town did not raise the issue of reinstatement in the state foreclosure action, such claims are precluded now. Metropolitan contends that K Town itself was under an obligation to take affirmative action in state court to exercise the Reinstatement Statute. This contention is in error. The issue of whether mortgage reinstatement requires a court determination was decided in *State Farm Ins. Comp. v. Town and Country Assoc.,* 85 Ill.App.3d 319, 406 N.E.2d 923, 926, 40 Ill.Dec. 720, 723 (Dist. 4 1980) (payment of

---

1. The Illinois Reinstatement Statute reads in relevant part:

   In any foreclosure of a mortgage ... which has become due prior to the maturity date fixed in the mortgage, or in any instrument or obligation secured by a mortgage, through acceleration because of a default under the mortgage, a mortgagor may reinstate the mortgage as provided herein. Reinstatement is effected by curing all defaults then existing, other than payment of such portion of the principal which would not have been due had no acceleration occurred, and by paying all costs and expenses

   required by the mortgage to be paid in the event of such defaults, provided that such cure and payment are made prior to the expiration of 90 days from the date the mortgagor ... [has] been served summons ... Upon such reinstatement of the mortgage, the foreclosure and any other proceedings for the collection or enforcement of the obligation secured by the mortgage shall be dismissed and the mortgage documents shall remain in full force and effect as if no acceleration had occurred....

   735 ILCS 5/15–1602 (Smith–Hurd 1993).

defaulted amounts automatically sets statute into operation).

Metropolitan also asserts two estoppel arguments. One is that the July 15, 1993, refinancing agreement between Metropolitan and Lopez estops K Town's present claim, even though K Town was not party to the July 15, 1993, agreement. The second estoppel argument is that, because K Town alleged in its complaint that money was deposited in the K Town checking account to pay other creditors, K Town should be estopped from claiming that it interpreted the February 6 letter to mean that the checking account balance would be used to cure the default of the K Town loans. Because Metropolitan prevails on other grounds, the estoppel arguments need not be addressed.

### DISCUSSION
#### A. Set-off Between K Town's Checking Account and the Lazcono Note

K Town contends that Metropolitan had no right to exercise set-off between the K Town checking account and the defaulted Lazcono Note because K Town and Lazcono are not the same legal entities. Metropolitan claims to have had both a common law right and a contractual right to setoff K Town's checking account balance against the Lazcono Note. K Town correctly points out that the common law right of set-off is limited to the mutual debts of identical legal entities. *See First Nat'l. Bank of Deerfield v. Lewis,* 186 Ill.App.3d 16, 20, 542 N.E.2d 124, 134 Ill.Dec. 124 (1989). As a result, Metropolitan had no common law right to setoff the K Town checking account against the Lazcono Note.

However, the lack of a common law right in the bank to set-off is unimportant since Metropolitan had a contractual right to setoff these two accounts under the terms of K Town's Guaranty of the Lazcono Note. *See* Ex. 2, par. 7. The Guaranty of the Lazcono note expressly provided that, in the event of default on the Lazcono Note, Metropolitan may apply any K Town account balances held at the bank, including K Town's checking account, against the Lazcono Note. Since there is no dispute that all three loans were in default, Metropolitan clearly had the contractual right to exercise set-off between the two accounts in February of 1991. *See Id.*

#### B. Fiduciary Duty

K Town argues that Metropolitan owed it a fiduciary duty to apply the set-off funds in a manner consistent with K Town's best interests. K Town contends that Metropolitan created this fiduciary duty when it placed funds in a special account over which K Town had no control. This claim is not well founded in law. *See Katz v. Belmont Nat'l. Bank of Chicago,* 112 Ill.2d 64, 491 N.E.2d 1157, 1159, 96 Ill.Dec. 697, 699 (1987); *see also* Bucknell, Goodwin, and Stoddard, *Lender Liability: Theory and Practice* §§ 1.21–1.29, pp. 1–22–1–36 (1992). In general, a lender is not a fiduciary of its borrower. *In re Aluminum Mills Corp.,* 132 B.R. 869, 976 (Bankr.N.D.Ill.1991), citing *In re W.T. Grant Co.,* 699 F.2d 599, 609 (2d Cir. 1983) *(cert. den. sub nom., Cosoff v. Rodman,* 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1993); *Katz,* 96 Ill.Dec. at 699, 491 N.E.2d at 1159.

The issue of whether a lender owes a borrower fiduciary duties may arise in the context of considering whether a lender's claims should be equitably subordinated because the lender has breached an alleged fiduciary duty to the borrower. *See Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting,* 908 F.2d 1351, 1355 (7th Cir.1991); *Aluminum Mills Corp.,* 132 B.R. 869, 976 (Bankr.N.D.Ill.1991); *In re Badger Freightways, Inc.,* 106 B.R. 971, 977 (Bankr.N.D.Ill. 1989); *In re Alper–Richman Furs, Ltd.,* 147 B.R. 140, 152 (Bankr.N.D.Ill.1992).

Under certain circumstances, a lender may create a fiduciary relationship by exercising improper control over a borrower. *See Lender Liability: Theory and Practice,* §§ 1.21–1.29, pp. 1–22—1–36. A fiduciary relationship may arise between borrower and lender when the lender becomes an "insider." *Lender Liability: Theory and Practice,* § 1.26, p. 1–29. Characteristics that courts have found indicative of insider control include whether the lender has a contractual right to control management of the borrower

and whether the lender and the borrower share common officers or directors. *See Id.*

Although the standard for finding a fiduciary relationship with an "outsider" is much higher, an "outsider" may still incur a fiduciary duty by exercising control and dominion over a borrower's finances. *Badger,* 106 B.R. at 977 (court considered whether lender's claim should have been equitably subordinated); *Lender Liability: Theory and Practice,* § 1.29, p. 135. Exerting dominion and control means that the lender must exercise sufficient authority over the corporate debtor so as to dictate corporate policy and the disposition of assets. *Badger,* 106 B.R. at 982. If the lending institution usurps the power to make business decisions from the customer's board of directors or officers, then it must also undertake the fiduciary obligations that officers and directors owe the corporation. *Id.* at 977.

A mere close relationship between the debtor and the lender is not enough to make the lender a fiduciary, nor is it sufficient to show that the lender could have exerted leverage by threatening to exercise its contractual rights. *Aluminum Mills,* 132 B.R. at 894 (citation omitted). Parties to a contract are not each other's fiduciaries; they are not bound to treat the other parties with consideration for their interests. *Kham & Nate's Shoes,* 908 F.2d at 1357; *see also Aluminum Mills,* 132 B.R. at 896 ("[t]here is no duty of 'kindness' among non-fiduciaries"). As noted by one Seventh Circuit panel

> Although Bank's decision left Debtor scratching for other sources of credit, Bank did not create Debtor's need for funds, and it was not contractually obligated to satisfy its customer's desires. The Bank was entitled to advance its own interests, and it did not need to put the interests of Debtor and Debtors other creditors first.

*Kham & Nate's Shoes,* 908 F.2d at 1358. Firms that have negotiated contracts are entitled to enforce them to the letter, even to the great discomfort of their trading partners, without becoming liable for the resulting hurt. *Id.* at 1357.

K Town has not sought to show that Metropolitan had insider control over K Town. Thus, it is left with the very high standard of showing that the Bank as an outsider owed it a fiduciary duty. K Town rests its claim of owed fiduciary duty entirely upon the fact that it lost control over its checking account. However, K Town had no right to oppose lost control over its checking account because Metropolitan was exercising its contractual right to set-off, which it was well justified in exercising. Metropolitan was an outsider, but did not wrest control over the account from K Town via negotiations allowing it to control K Town's financial arrangements, governance, or business decisions. *See KMC Co., Inc. v. Irving Trust Co.,* 757 F.2d 752 (6th Cir.1985).

Thus, Metropolitan had no fiduciary duty to setoff in a way that benefited K Town. There being no breach of fiduciary duty, plaintiff's reasoning under the Illinois Reinstatement Act has no merit.

## C. *"But For" Cause of Injury*

It is unnecessary to this decision, but worthwhile to point out that damages could not be established by plaintiff in this matter. In order for K Town to recover tort damages against Metropolitan, it had to prove that it sustained injury that would not have been sustained absent wrongful conduct by Metropolitan. For Metropolitan's failure to comply with the terms of the February 6 letter to have been the proximate cause of K Town's injuries, K Town would have to prove that if Metropolitan had acted as the letter represented, K Town's assets could not have been seized by Metropolitan.

The documents filed with the court and the admissions of both parties prove otherwise. The Guaranty of the Lazcono Note expressly states that any assets which collateralized any K Town loans outstanding with Metropolitan also collateralized the Lazcono Note. Ex. 2, par. 3(ii). The guaranty also expressly granted Metropolitan the right to seize K Town assets, before it had to resort to Lazcono assets, in the event of default of the Lazcono Note. Ex. 2, par. 4. Where a written guaranty is clear and unam-

biguous, the parties should be held to the contract. *Irving Tanning Co. v. American Classic, Inc.*, 736 F.Supp. 161, 163 (N.D.Ill. 1990).

Even if the Lazcono Note were fully secured by Lazcono assets, as long as that Note was in default, Metropolitan would have recourse to any K Town assets securing any loans outstanding between K Town and Metropolitan. *See* Ex. 2, par. 4. Thus, even if the checking account balance had been used to cure the default of the two K Town loans, Metropolitan would still have had access to all the collateral securing those loans as long as there were still amounts outstanding on the debts. If Metropolitan had initially set-off the accounts in the way stated in its February 6 letter, Metropolitan still could have foreclosed on the mortgages securing the two K Town loans and seized the accounts in issue.

With the cross-collateralization provisions in the K Town guaranty of the Lazcono Note, the injury to K Town could have been prevented only if K Town and Lazcono had available funds to cure all arrearages on all outstanding notes to Metropolitan. There was, however, only enough money in the K Town checking account to cure at most the defaults on the two K Town loans. Because plaintiff pleaded that defendants' method of set-off deprived it of necessary funds, it can hardly claim to have had the ability to cure.

Because K Town has suffered no injury it would not have otherwise suffered in the absence of Metropolitan's conduct complained of, K Town cannot sustain a damage claim.

### CONCLUSION

For reasons described herein, the Bank's motion for summary judgment is allowed. Judgment will be entered by separate order.