Catherine A. STERN and Thomas
H. Stern, Plaintiffs,

v.

GREAT WESTERN BANK, a Federal
Savings Bank, Defendant.

No. 96 C 1290.

United States District Court,
N.D. Illinois,
Eastern Division.

March 10, 1997.

Thomas H. Stern, Dawn Marie Maxwell, Thomas H. Stern, P.C., Chicago, IL, for Catherine A. Stern, Thomas H. Stern.

Steven B. Varick, Francis L. Keldermans, McBride, Baker & Coles, Chicago, IL, for Great Western Bank.

## OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiffs, Catherine A. Stern and Thomas H. Stern have filed a five count complaint against defendant, Great Western Bank, arising from defendant's compliance with a subpoena of records relating to a mortgage that plaintiffs have with defendant. Plaintiffs allege: (1) invasion of privacy; (2) violation of the Consumer Financial Records Act, 205 Ill. Comp. Stat. 5/48.1 (West 1992); (3) violation of the Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.* (West 1992); (4) breach of fiduciary duty; and (5) breach of the covenant of good faith and fair dealing. Defendant has moved to dismiss all counts of the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim on which relief can be granted. For the reasons set forth below, this court grants defendant's motion.

## FACTS [1]

Plaintiffs, a married couple, borrowed money from defendant bank, which obtained a mortgage on plaintiffs' real property in California. Defendant is located in California and has no branch in Illinois.

During the application period for the loan, plaintiffs disclosed financial information to defendant. In addition, plaintiffs and an agent of defendant signed an "Authorization to Disclose" (the "Authorization") which granted defendant permission to acquire information regarding plaintiffs from third parties. Through the Authorization, defendant had the right to obtain information regarding plaintiffs' bank accounts, loan status and payment histories, employment histories, and credit reports. To insure confidentiality, defendant agreed that the information would be used only to evaluate plaintiffs' loan request, and that "the information [would] not be disclosed to any third party, except as required by law or permitted by federal regulation."

On May 31, 1995, attorney Ellen Sidney Weisz sent a subpoena duces tecum stamped by the Clerk of the Circuit Court of Cook County (the "Subpoena") to defendant. Ms. Weisz represented Thomas Stern's former wife, Myrna S. Stern, in a petition for contribution of college expenses for Myrna and Thomas Sterns' seventeen year old son. Mr. Stern's defense was largely based on his claim that he was financially unable to pay the college expenses.

The Subpoena requested that defendant produce before Judge Grace Dickler in the Daley Center in Chicago information relating to the following: (1) the loan involving the California property; (2) Thomas S. Stern in his individual capacity and (3) Thomas Stern, P.C., a professional corporation. A pre-printed portion of the form asked that defendant "bring" the documents to the court on June 7, 1995, and that failure to appear in response to the subpoena would subject defendant to punishment for contempt of court. The issuing attorney typed in the upper right corner of the Subpoena, in capital letters and underlined, the words *"SUBPOENA FOR DOCUMENTS ONLY"*.

Upon receipt of the Subpoena, an employee of defendant mailed the requested information to Ms. Weisz in a sealed envelope. Defendant also sent instructions to Ms. Weisz that described the appropriate manner in which to open the sealed envelope, according to California law. Ms. Weisz brought the sealed envelope to a hearing on June 21, 1995, and Judge Dickler granted Ms. Weisz the court's authorization to open the envelope. Both Thomas Stern and his attorney in the contribution matter were present at the June 21 hearing but raised no objection to opening the envelope or disclosing its contents. Defendant did not itself notify plaintiffs of the Subpoena. Based on the report of proceedings, however, it is apparent that Thomas Stern was aware of the Subpoena by June 21, 1995, when he attended the hearing. Plaintiffs allege that they were somehow damaged by the disclosure of the documents pursuant to Judge Dickler's order.

## STANDARD

Dismissal of the claim is appropriate only if it is clear that there could be no relief under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984), *citing, Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). All well-pled facts will be taken as true, and all inferences will be made in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Chisholm v. Foothill Capital Corporation*, 940 F.Supp. 1273, 1280 (1996). Courts are not to assume that a plaintiff can prove facts that it has not alleged, nor that a defendant has violated laws in ways that the plaintiff has not alleged. *Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 902, 74 L.Ed.2d 723 (1983).

**1.** This court takes judicial notice of the court record in *Stern v. Stern*, No. 81–D–27792 (Circuit Court Cook County, Domestic Relations Division), information from which is used by both sides to this dispute. *See* Fed.R.Evid. 201; *Cagan v. Intervest Midwest Real Estate Corp.*, 774 F.Supp. 1089 (N.D.Ill.1991).

## *Count I: INVASION OF PRIVACY*

Plaintiffs allege in Count I that defendant violated their right to privacy when it complied with the Subpoena. Plaintiffs' claims are based on both the Illinois Constitution and Illinois common law.

### (A) The Illinois Constitution

■ Plaintiffs seek to hold defendant liable for violation of Article 1, § 6 of the Illinois Constitution, which provides in part: "The People shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, [and] invasions of privacy ..." Ill. Const.1970, art. I, § 6.

■ Section six of the Illinois Constitution was not intended to deal with the relationship between individuals and individuals: it provides individuals protection from invasions of privacy by government or public officials only. *Kelly v. Franco*, 72 Ill.App.3d 642, 645, 391 N.E.2d 54, 56–57, 28 Ill.Dec. 855, 857–858 (1st Dist.1979); *Kelly v. Mercoid Corp.*, 776 F.Supp. 1246, 1256 (N.D.Ill. 1991). Section Twelve of Article I of the Illinois constitution provides: "Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation ..." Section Twelve does not work to transform Section Six into providing a cause of action against private defendants. (*See Id., citing, Angelini v. Snow*, 58 Ill.App.3d 116, 119, 15 Ill.Dec. 780, 783, 374 N.E.2d 215, 218 (1978)).

Defendant is not a government entity, but a privately owned bank. Its actions are not those of a public official. Accordingly, plaintiffs can state no claim under the Illinois Constitution.

### (B) Illinois Common Law

■ Plaintiffs assert that defendant's actions constitute a public disclosure of private facts. To state a claim for public disclosure of private facts, plaintiffs must allege that: (1) publicity was given to the disclosure of private facts; (2) the facts were private, not public; and (3) the matter made public was such as to be highly offensive to a reasonable person. *Miller v. Motorola Inc.*, 202 Ill.

App.3d 976, 148 Ill.Dec. 303, 305, 560 N.E.2d 900, 902 (1st Dist.1990); Restatement (Second) of Torts § 652D at 383 (1977). Defendant asserts that plaintiffs fail to allege the first and third elements.

■ In pleading the first element (the "publicity requirement") plaintiffs allege that "the defendant ... sent 90 pages of confidential financial records and information concerning the plaintiffs ... to a third person, who held no position with the Circuit Court of Cook County, Illinois." Although the complaint does not specify to whom the information was sent, it is clear from the June 21, 1995, hearing transcript that defendant sent the information to Ms. Weisz in a sealed envelope. Plaintiffs also admit in their brief that the information was sent to Ms. Weisz.

■ Generally, to adequately plead the publicity requirement for this tort, a plaintiff must allege that the matter was communicated to the public at large, or to so many persons that the matter must be regarded as one of general knowledge, rather than merely being communicated to a small group. Restatement (Second) of Torts, § 652D, comment a, at 384 (1977); *Miller v. Motorola Inc.*, 202 Ill.App.3d 976, 980, 560 N.E.2d 900, 903, 148 Ill.Dec. 303, 306; *Roehrborn v. Lambert*, 277 Ill.App.3d 181, 184, 660 N.E.2d 180, 182, 213 Ill.Dec. 923, 925. Plaintiffs do not attempt to allege that the information was communicated to the public at large. Rather, they rely on an exception to the general rule which provides that the publicity requirement may be satisfied by disclosing the matter to a small number of people who have a special relationship with the plaintiff. *Miller*, 202 Ill.App.3d at 980, 560 N.E.2d at 903, 148 Ill.Dec. at 306; *Roehrborn*, 277 Ill. App.3d at 184, 660 N.E.2d 180 at 182, 213 Ill.Dec. at 925. In defining a "special relationship," the *Miller* court stated:

An invasion of a plaintiff's right to privacy is important if it exposes private facts to a public whose knowledge of those facts would be embarrassing to the plaintiff. Such a public might be the general public, if the person were a public figure, or a particular public such as fellow employees, club members, church members, family or

neighbors, if the person were not a public figure.

The special relationship exception, however, does not apply in circumstances where the recipient of the information had a "natural and proper interest" in the information. *Roehrborn v. Lambert*, 277 Ill.App.3d 181, 184, 660 N.E.2d 180, 182, 213 Ill.Dec. 923, 925. In *Roehrborn* the plaintiff started out working as a probationary officer. He arranged to attend a police training school, but the Board of Fire and Police Commissioners required him to take polygraph and psychological tests before he could attend the school. The defendant communicated the unfavorable test results to the school and the plaintiff was expelled. 277 Ill.App.3d 181, 183, 660 N.E.2d 180, 182, 213 Ill.Dec. 923, 925. The *Roehrborn* court granted the motion to dismiss because the recipients of the test results "had a legitimate interest" in the information. *Id.* at 184, 660 N.E.2d at 182, 213 Ill.Dec. at 925.

Defendant argues that here, as in *Roehrborn*, Ms. Weisz had a natural and proper interest in viewing the financial information because she was the attorney representing Thomas Stern's former spouse in a legal proceeding where Thomas Stern's financial situation was in dispute. This court agrees.

Thomas Stern put his own financial records at issue by raising his financial ability to contribute to his son's education in the state court action. By so doing, he opened the door to an investigation into the truth of his assertions. Accordingly, Ms. Weisz subpoenaed defendant for relevant documents. The only issue is whether defendant should have complied with a lawfully issued, out of state subpoena. It did so, at least in its view, only after complying with the safeguards of California law. Ms. Weisz, pursuant to defendants' instruction, sought leave from the Illinois court to open the documents. Finding the documents relevant to the proceeding and with no objection, the court granted leave.[2]

If plaintiffs were concerned about disclosure to Myrna Stern, they could have sought a protective order at that time. The Illinois Rules of Civil procedure provide ample mechanisms for preventing unwarranted discovery of confidential information. *See* Ill. S.Ct. Rule 201(c)(1). Plaintiffs elected not to avail themselves of those mechanisms and cannot now be heard to complain.

Therefore, Ms. Weisz had a legitimate, natural and proper interest in the information produced by defendant, as clearly determined by the Illinois court. Accordingly, the court concludes that plaintiffs have not adequately plead the publicity requirement.

Moreover, the court agrees with defendant that plaintiffs cannot establish the third element, that the matter disclosed was highly offensive to a reasonable person. Allegations of offensiveness should be considered in light of the conduct and circumstances surrounding the publication as well as the publication itself. *Huskey v. National Broadcasting Company, Inc.*, 632 F.Supp. 1282, 1289 (N.D.Ill.1986); *Miller v. National Broadcasting Co.*, 187 Cal.App.3d 1463, 1483, 232 Cal.Rptr. 668 (1986). The "publication" occurred at the time Ms. Weisz opened the sealed envelope in court pursuant to Judge Dickler's order. The information disclosed was not highly offensive to a reasonable person. Accordingly, because plaintiffs have not stated a cause of action for public disclosure of private facts, Count I is dismissed with prejudice.

### Count II: CONSUMER FINANCIAL RECORDS ACT

Plaintiffs allege in Count II that defendant violated the Illinois Consumer Financial Records Act, 205 Ill. Comp. Stat. 5/48.1, (the "CFRA") when defendant sent the information pursuant to the Subpoena, without giving plaintiffs prior notice.

The CFRA sets forth requirements for banks in maintaining confidentiality of con-

---

**2.** Mr. Stern's failure to object during the proceeding for contribution would appear to constitute a waiver of any claim arising from the disclosure of the contents of the envelope sent to Ms. Weisz. *See People v. Jahn*, 246 Ill.App.3d 689, 702, 615 N.E.2d 1270, 1278, 186 Ill.Dec. 213, 221 (2nd Dist.1993) (failure to object resulted in waiver). Because defendant has not raised this issue, the court will address the issues that were raised.

sumer financial records. The CFRA provides, in part, that banks shall not disclose financial records relating to a customer unless: (a) the customer has authorized disclosure; or (b) the financial records are disclosed in response to a lawful subpoena, summons, warrant or court order only after the bank mails a copy of the subpoena to the customer, unless the bank is specifically prohibited from notifying the customer. 205 Ill. Comp. Stat. 5/48.1 (b)—(d).

Defendant has moved to dismiss this count arguing that there is no private right of action under the CFRA. It is undisputed that there is no express private right of action under the statute. Therefore, plaintiff can state a claim only if a private right of action can be implied.

No Illinois court has directly addressed this issue. In *Jacobson v. Johnson*, 798 F.Supp. 500 (C.D.Ill.1991), the court addressed the issue of whether the Illinois Banking Act (of which the CFRA is part) meets the notice requirements of due process. In reaching its decision, the court, without analysis, concluded that the Illinois Banking Act does not provide a private remedy. 798 F.Supp. at 504. *Id.*

 To determine whether a private right of action should be implied into an Illinois statute, the court's focus must be primarily on the intent of the legislature. *Moore v. Lumpkin*, 258 Ill.App.3d 980, 989, 630 N.E.2d 982, 988, 196 Ill.Dec. 817, 823 (1st Dist.1994). To determine legislative intent, this court looks first to the language of the statute, which is the best indication of the drafter's intent. *Id. citing Sawyer Realty Group, Inc. v. Jarvis*, 89 Ill.2d 379, 388, 432 N.E.2d 849, 853, 59 Ill.Dec. 905, 909 (1982). Words in the statute will be given their ordinary meanings. *Id. citing, Byrne v. City of Chicago*, 215 Ill.App.3d 698, 707, 159 Ill. Dec. 350, 355, 576 N.E.2d 19, 24. Moreover, the statute should be interpreted as a whole, looking at every relevant section in relation to other sections. *Id. citing Kraft, Inc. v. Edgar*, 138 Ill.2d 178, 189, 149 Ill.Dec. 286, 291, 561 N.E.2d 656, 661 (1990).

The Illinois Supreme Court has created the following four prerequisites, all of which must be satisfied before a private right of action will be implied into a statute: (1) the plaintiff is a member of the class of persons for whose benefit the statute was enacted; (2) plaintiff's injury is one which the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) a private right of action is necessary to effectuate the purposes of the act, i.e., to provide an adequate remedy for violations of the statute. *Moore v. Lumpkin*, 258 Ill.App.3d 980, 989, 630 N.E.2d 982, 989, 196 Ill.Dec. 817, 824; *Rodgers v. St. Mary's Hospital*, 149 Ill.2d 302, 308, 173 Ill.Dec. 642, 645, 597 N.E.2d 616, 619 (1992); *Corgan v. Muehling*, 143 Ill.2d 296, 312–313, 158 Ill.Dec. 489, 496, 574 N.E.2d 602, 609 (1991).

Plaintiffs are clearly members of the class of persons for whose benefit the statute was enacted. The statute's main purpose is to protect customers' confidential financial records that are maintained at financial institutions. Here, plaintiffs are customers of defendant, since they agreed to buy the defendant's service (a loan) at a certain price (the interest rate). This court also agrees with plaintiffs that the second requirement is met: plaintiffs' injury—the loss of confidentiality of their confidential financial information—is the exact injury that the statute is designed to protect.

With respect to the third element of the test, however, plaintiffs' arguments are less convincing. Plaintiffs tersely infer from the statute that a private right of action is consistent with the underlying purposes of the statute, without identifying the purpose. Further, plaintiffs argue that a private right of action is the only method in which bank customers will be compensated for the bank's violation of the statute. Plaintiffs fail to provide the court with any authority indicating that the Illinois legislature actually intended customers to be compensated for their injuries under the CFRA. The statute certainly does not provide for private compensation. It appears that the legislature preferred to leave the compensation of those persons whose privacy is violated under the CFRA to the remedies available, if any, under common law. Plaintiffs have provided

nothing to convince this court that the Illinois legislature meant anything but that which is written in the plain meaning of the enforcement clause of the statute.

Lastly, this court must determine whether implying a private right of action is necessary to effectuate the purposes of the act. The act provides a criminal enforcement provision pursuant to which any officer or employee who fails to comply with the act will be guilty of a business offense and subject to a fine of up to $1000.00. 205 Ill. Comp. Stat. 5/48.1(e). A criminal penalty written into a statute weighs against the necessity of implying a private right of action to effectuate the purposes of an act; however, the fact that the act provides only a criminal penalty for its violation does not end the inquiry of whether a civil action is barred. *Parra v. Tarasco*, 230 Ill.App.3d 819, 172 Ill.Dec. 516, 595 N.E.2d 1186 (1st Dist.1992), *quoting, Rhodes v. Mill Race Inn, Inc.*, 126 Ill.App.3d 1024, 1027, 81 Ill.Dec. 793, 795, 467 N.E.2d 915, 917 (1984).

If the penalties to those who violate a statute are so minor that they provide no incentive for compliance, then a private right of action may be necessary. *Moore v. Lumpkin*, 258 Ill.App.3d 980, 996, 630 N.E.2d 982, 994, 196 Ill.Dec. 817, 829. Bank officers or employees gain virtually no benefit, surely no benefit larger than $1000.00, for failing to comply with the CFRA. Further, the bank does not lose anything, because it may be reimbursed for the costs that have been incurred in reproducing records. *See* 205 Ill. Comp. Stat. 5/48.1(g). The only benefit worth more than $1000.00 that one might receive for disclosing customer's financial records would be improper compensation in the form of a bribe or a payoff. Obviously, those are separate matters, sufficiently addressed by existing criminal and tort law. This court concludes that a private right of action is not necessary to effectuate the purposes of the act. Accordingly, because plaintiffs cannot state a cause of action under the CFRA, Count II is dismissed with prejudice.[3]

### *Count III: CONSUMER FRAUD ACT*

Plaintiffs allege in Count III that defendant violated the Consumer Fraud Act, 815 Ill. Comp. Stat. 505/2 (West 1992), when it complied with the Subpoena, in violation of the Authorization. To allege a violation of the Consumer Fraud Act, plaintiffs must allege that: (1) defendant performed a deceptive act or practice; (2) defendant intended that the plaintiffs rely on the deception; and (3) the deception occurred in the course of conduct involving trade or commerce. 815 Ill. Comp. Stat. 505/2; *Siegel v. Levy Organization Development Co.*, 153 Ill.2d 534, 542, 180 Ill.Dec. 300, 304, 607 N.E.2d 194, 198 (1992). In order to violate the Consumer Fraud Act, the acts and practices must be capable of being interpreted in a misleading way. *Kedziora v. Citicorp National Services, Inc.*, 780 F.Supp. 516, 534 (N.D.Ill. 1991).

Defendant argues that the first element of the Consumer Fraud Act is not met because there was no act of deception: in the Authorization, plaintiffs agreed that defendant may disclose information that was required by law to be disclosed. Defendant, at the very least, was under the impression that the documents were to be disclosed by law and thus acted in compliance with the Subpoena.

To fit within the definition of a deceptive act or practice, the act must mislead and cannot merely constitute error. *Stern v. Norwest Mortgage, Inc.*, 284 Ill.App.3d 506, 513, 672 N.E.2d 296, 302, 219 Ill.Dec. 788, 794 (1st Dist.1996) (a reasonable difference of opinion existed as to the meaning of an Illinois act and defendant's noncompliance with

---

**3.** Moreover, it is unclear whether the bank is the proper defendant for purposes of the CFRA. It is likely that any possible cause of action that plaintiffs might have would be against only the actual employee or officer that improperly dispensed the information. *See*, 205 Ill. Comp. Stat. 5/48.1(e). In some instances the statute prescribes the proper activity of the "bank", *see e.g.* 205 Ill. Comp. Stat. 5/48.1(c). Yet the enforcement clause provides that "officers or employees" will be guilty criminally and will have to pay a fine. 205 Ill. Comp. Stat. 5/48.1(e). It appears that the proper defendant, under the plain words of the enforcement provision, 205 Ill. Comp. Stat. 5/48.1(e), would be "any officer or employee of a bank" rather than the bank itself. Because the court concludes that no private right of action exists it need not decide this issue.

the act amounted to error rather than deception); *Mackinac v. Arcadia National Life Insurance Co.*, 271 Ill.App.3d 138, 207 Ill. Dec. 781, 648 N.E.2d 237 (1st Dist.1995). In the instant case plaintiffs allege, at most, that defendant erroneously complied with a lawful subpoena.[4]

Defendants argue that the second element of the Consumer Fraud Act is not met because defendant did not intend that plaintiffs rely on the alleged deceptive practice. The alleged deceptive practice consisted of defendant's claim that it would not release information unless it was required to by law and yet released information when it received the Subpoena.

Intent was established in *Dwyer v. American Express Co.*, 273 Ill.App.3d 742, 750, 652 N.E.2d 1351, 1357, 210 Ill.Dec. 375, 380 (1st Dist.1995), where credit card holders sued the issuer for disclosing information about the customers' spending patterns to third party marketing firms. The *Dwyer* court explained that the issuer had a strong incentive to keep its practice of disclosing cardholder information to third parties a secret because disclosure would have resulted in fewer cardholders desiring cards. *Id.*

In *Dwyer* the defendant knew at the time of contracting that the information would be disclosed (without a subpoena) to third parties and yet did not tell that to its customers. Noticeably absent from the complaint in the instant case is any allegation that defendant entered into the Authorization intending to violate it whenever served with a subpoena. It defies logic to argue that defendant entered into the Authorization with the intent that it would receive a subpoena and with the intent of disclosing information in good faith pursuant to a subpoena. Plaintiffs have not alleged the second element of the Consumer Fraud Act.

Further, the Consumer Fraud Act does not apply to the instant case. The Consumer Fraud Act has been properly applied in cases where a defendant made affirmative misrepresentations to the plaintiffs. *See Crowder v. Bob Oberling Enterprises, Inc.*, 148 Ill.App.3d 313, 101 Ill.Dec. 748, 499 N.E.2d 115 (4th Dist.1986) (car salesman lied to customer about quality of used car), *Lane v. Fabert*, 178 Ill.App.3d 698, 127 Ill.Dec. 674, 533 N.E.2d 546 (4th Dist.1989) (broker told customer it would hold collateral, then sold it). Yet, in the instant case, as in *Bankier v. First Federal Savings and Loan Association of Champaign*, 225 Ill.App.3d 864, 875, 588 N.E.2d 391, 398, 167 Ill.Dec. 750, 757 (4th Dist.1992), the plaintiffs and defendant merely disagree on the interpretation of a contract between them. In *Bankier*, where the parties disputed whether they agreed to a prepayment penalty under a construction loan, the court explained that that was a mere breach of contract issue to which the Consumer Fraud act does not apply. The Consumer Fraud Act was not intended to provide a remedy for ordinary common law breach of contract actions. *Id.* at 874, 588 N.E.2d at 398, 167 Ill.Dec. at 757.

The parties dispute whether under the Authorization the bank could release documents pursuant to the Subpoena. This is a mere breach of contract issue, to which the Consumer Fraud Act does not apply. Accordingly, because plaintiffs have not alleged a violation of the Consumer Fraud Act, Count III is dismissed with prejudice.[5]

### Count IV: Breach of Fiduciary Duty

Plaintiffs allege in Count IV that defendant breached a fiduciary duty when defendant released plaintiffs' information pursuant to the Subpoena. Plaintiffs allege that because defendant had confidential information relating to the plaintiffs, and plain-

---

4. Plaintiffs concede in their complaint that defendant's employee mailed the documents believing that the defendant had been served with a lawful subpoena duces tecum. Even if the Subpoena were not valid, plaintiffs have not adequately plead deception because there could be a reasonable difference of opinion as to whether the Subpoena were valid. (*See Stern v. Norwest Mortgage, Inc.*, 284 Ill.App.3d 506, 513, 672

N.E.2d 296, 302, 219 Ill.Dec. 788, 794 (mistake is not deception.))

5. It is also questionable whether the plaintiffs' complaint could withstand a motion to dismiss under the Consumer Fraud Act where it appears that no damages have resulted. (See, *Dwyer v. American Express Co.*, 273 Ill.App.3d 742, 750, 652 N.E.2d 1351, 1357, 210 Ill.Dec. 375, 381.)

tiffs did not have confidential information relating to defendant, defendant was in a dominant position with respect to plaintiffs and a fiduciary relationship existed as a matter of law.

To state a cause of action for breach of fiduciary relationship, plaintiffs must at least allege a fiduciary duty, and a fiduciary duty must exist between the parties as a matter 'of law. *Mid–America National Bank of Chicago v. First Savings and Loan Association of South Holland,* 161 Ill.App.3d 531, 537, 515 N.E.2d 176, 181, 113 Ill.Dec. 367, 372 (1st Dist.1976).

Generally, a lender is not considered a fiduciary of its borrower. *K Town, Inc. v. Metropolitan Bank & Trust Company,* 171 B.R. 313 (Bankr.N.D.Ill.1994); *In re Aluminum Mills Corp.,* 132 B.R. 869, 876 (Bankr.N.D.Ill.1991). However, such a relationship may occur where one party, due to a close relationship, relies heavily on the judgment of another. *Mid–America National Bank of Chicago,* 161 Ill.App.3d 531, 537, 515 N.E.2d 176, 180, 113 Ill.Dec. 367, 371, *citing, Gary–Wheaton Bank v. Burt,* 104 Ill.App.3d 767, 774, 60 Ill.Dec. 518, 525, 433 N.E.2d 315, 322. Yet, a slightly dominant business position will not transform a formal, contractual relationship into a confidential or fiduciary relationship. *Id. quoting, Gary–Wheaton Bank v. Burt,* 104 Ill.App.3d 767, 774, 60 Ill.Dec. 518, 525, 433 N.E.2d 315, 322. Further, the conventional mortgagor-mortgagee relationship, standing alone, is insufficient to sustain an allegation of a fiduciary or special relationship. *Id.* at 538, 113 Ill.Dec. 367, 372, 515 N.E.2d 176, 181. Plaintiffs have not alleged anything to suggest that the relationship between them and defendant was any-

thing other than a typical mortgagee-mortgagor relationship.

Defendants argue that a fiduciary relationship does not exist as a matter of law because defendant has no dominant business position in this conventional mortgagor-mortgagee contractual relationship. The court agrees.

It is surely within the conventional mortgagor-mortgagee relationship for a lender to know a borrower's financial affairs so that the lender may evaluate the degree of risk involved in entering into the transaction.[6] Plaintiffs have alleged nothing to indicate that defendant has any dominance greater than that of a conventional mortgagor. Plaintiffs are not in a fiduciary relationship with defendant. Accordingly, because plaintiffs have not stated a cause of, action for breach of fiduciary duty, Count IV is dismissed with prejudice.

### Count V: Breach of Covenant of Good Faith and Fair Dealing

Finally, plaintiffs allege in Count V that defendant violated the so-called "covenant of good faith and fair dealing" when it complied with the Subpoena after signing the Authorization in which it promised to keep the information confidential. In Illinois, the covenant of good faith and fair dealing is not an independent source of duties for the parties to a contract. *Beraha v. Baxter Health Care Corp.,* 956 F.2d 1436, 1443 (7th Cir. 1992). The lack of good faith alone does not create a cause of action. 956 F.2d at 1443; *Williams v. Jader Fuel Co., Inc.,* 944 F.2d 1388, 1394 (7th Cir.1991), *cert. denied,* 504 U.S. 957, 112 S.Ct. 2306, 119 L.Ed.2d 228 (1992). The covenant of good faith and fair

6. It may be argued that a fiduciary relationship existed because the Consumer Financial Records Act created an affirmative duty upon all holders of financial information to research the validity of a subpoena before dispensing information pursuant to it. The Illinois Legislature, in P.A. 81–1145, amended the CFRA and deleted a section of the statute that provided in part, "if a state bank is presented with a subpoena ... which on its face appears to have been issued upon the lawful authority, the state bank may act upon such subpoena ...", and substituted that information may be released "under a lawful subpoena. ." (emphasis added). This change appears to

create a duty to determine the validity of a subpoena.

Nonetheless, this argument is unsuccessful because there is neither an express nor an implied private right of action under the CFRA. The separation of powers doctrine that weighed against an implied right of action under the CFRA further weighs heavily against the adoption of using portions of the CFRA as a legal standard of care in a breach of fiduciary relationship action between individuals. See, *Mid–America National Bank of Chicago,* 161 Ill. App.3d 531, 537, 515 N.E.2d 176, 180, 113 Ill. Dec. 367, 371.

dealing is simply implied within the terms of contracts under Illinois law. 956 F.2d at 1443; *Martindell v. Lake Shore Nat'l Bank*, 15 Ill.2d 272, 154 N.E.2d 683, 690 (1958).

Plaintiffs cite to *Pommier v. Peoples Bank Marycrest*, 967 F.2d 1115 (7th Cir.1992), for the proposition that there is a cause of action for breach of the covenant of good faith. They are mistaken. The *Pommier* court did not analyze such a cause of action, but merely stated that in order to imply a covenant, a contract must first exist between the parties. 967 F.2d at 1120–21. *Pommier* does not provide a separate cause of action for an implied covenant of good faith under Illinois law. Plaintiffs cite to no other case in support of their assertion that such a cause of action may be maintained, or is adequately plead under Illinois law.

The court concludes that under Illinois law the implied covenant of good faith and fair dealing is not a separate obligation upon which a cause of action may be based. *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir.1992); *Williams v. Jader Fuel Co., Inc.*, 944 F.2d 1388, 1394 (7th Cir.1991); *Martindell v. Lake Shore Nat'l Bank*, 15 Ill.2d 272, 154 N.E.2d 683, 690 (1958). Accordingly, because plaintiffs have not stated a claim for a so-called breach of implied covenant of good faith, Count V is dismissed with prejudice.

### CONCLUSION

For the reasons set forth above, this court grants defendant's motion to dismiss on all counts.